[Crim. No. 12.   Third Appellate District.—November 27, 1905.]

THE PEOPLE, Respondent, v. GEORGE C. FRANK, Appellant.

CRIMINAL LAW—APPEAL FROM ORDER DENYING NEW TRIAL—BILL OF EXCEPTIONS — FACTS UPON MINUTES — INSUFFICIENT AUTHENTICATION—CURE OF OBJECTION.—In a criminal case, where the motion for a new trial upon statutory grounds, of the denial of the motion, and of the exception thereto, appear only in the minutes of the court, and are not incorporated in the bill of exceptions, they are not sufficiently authenticated, as required by rule 29 of the supreme court; but where objection thereto has been cured under rule 14, the appeal from the order denying the new trial is not ineffectual.

ID.—MURDER—EVIDENCE—CORPUS DELICTI—CONVICTION UPON ADMISSION INSUFFICIENT.—Upon a charge of murder, the *corpus delicti* must be proved by evidence independent of the extrajudicial admissions of the defendant; and no conviction can be sustained upon such admissions alone.

Id.—Corpus Delicti of Murder—Component Parts.—The *corpus delicti* in murder has two components: Death as the result, and the criminal agency of another as the means, and both components must be established by independent proof, to sustain a conviction for murder.

Id.—Absence of Independent Proof.—Where, so far as the evidence shows, deceased may have been accidentally shot by some one hunting in the vicinity, and no independent fact or circumstance appears that shows the crime of murder committed, or tends in any way to connect the defendant with the deceased, apart from his statement that he shot the deceased in self-defense, there is no proof of the *corpus delicti,* and a verdict of guilty of murder in the first degree cannot be sustained.

APPEAL from a judgment of the Superior Court of Mariposa County, and from an order denying a new trial. J. J. Trabucco, Judge.

The facts are stated in the opinion of the court. ·

R. D. Stolder, and E. D. McCabe, for Appellant.

U. S. Webb, Attorney General, for Respondent.

CHIPMAN, P. J.—Defendant was convicted of murder in the first degree and sentenced to imprisonment for life. He appeals from the judgment of conviction, and from the order denying his motion for a new trial.

The attorney general makes the point that the appeal from the order is ineffectual, because the bill of exceptions does not show that the motion for a new trial was made, nor does it show what action, if any, was taken by the court thereon. The record shows that at the time the defendant was called for sentence he moved for a new trial upon the statutory grounds, the motion was denied, and defendant excepted. These facts appear only in the minutes of the court and do not appear in the bill of exceptions. Under the decision in *People* v. *Ruiz,* 144 Cal. 251, [77 Pac. 907], the above matters were not sufficiently authenticated, as required by rule 29 of the supreme court (130 Cal. xlviii, 78 Pac. xii). (See *People* v. *Durand,* 1 Cal. App. 71, [81 Pac. 672].) The objection, however, has been cured under rule 14 (130 Cal. xlii, 78 Pac. x).

It is the settled law in this state that no person can be convicted of a crime upon his extrajudicial admissions alone..

The *corpus delicti* must be proved by evidence independent of the extrajudicial confessions or admissions. (*People* v. *Jones,* 31 Cal. 565; *People* v. *Thrall,* 50 Cal. 416; *People* v. *Simonsen,* 107 Cal. 345, [40 Pac. 440]; *People* v. *Jones,* 123 Cal. 65, [55 Pac. 698]; *People* v. *Tapia,* 131 Cal. 647, [63 Pac. 1001]; *People* v. *Ward,* 145 Cal. 736, [79 Pac. 448]. See, also, *State* v. *Williams,* 78 Am. Dec. 254, 258 [note]; *Daniels* v. *State,* 6 Am. St. Rep. 251 [note].) It was said in *People* v. *Simonsen,* 107 Cal. 345, [40 Pac. 480] : "The term '*corpus delicti*' means exactly what it says. It involves the °element of crime. Upon a charge of homicide, producing the dead body does not establish the *corpus delicti.* It would simply establish the *corpus;* and proof of the dead body alone, joined with a confession by the defendant of his guilt, would not be sufficient to convict. For there must be some evidence tending to show the commission of a homicide, before a defendant's confession would be admissible for any purpose." The *corpus delicti* in murder has two components: Death as the result, and the criminal agency of another as the means. (*Ruloff* v. *People,* 18 N. Y. 179, 182.) The extrajudicial confession or admission alone is not sufficient proof to establish the crime.

It would be difficult to find a case in the books where the rule has been applied with stronger reason than is its application demanded in the present case. Murder is defined to be: "The unlawful killing of a human being with malice aforethought." (Pen. Code, sec. 187.) "Such malice may be expressed or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (Pen. Code, sec. 188.)

Apart from the admission of the defendant that he shot the deceased in self-defense (which will be noticed later), there is not a single fact nor a single circumstance disclosed by the evidence that in any way, even remotely, connects the defendant with the death of the deceased, and defendant's confession was far from an admission that he murdered the deceased. They lived a mile or more apart in a sparsely settled region; they had but a passing acquaintance, no busi-

ness, social, or other relations between them appeared, no disagreement of any kind existed, no motive whatever for committing the crime was shown, and nothing connected with the appearance of the body when found pointed to murder by anyone. So far as the evidence showed, the deceased may have come to his death from the accidental shot of some one hunting in the vicinity. The body of deceased was found on Tuesday, May 31, 1904, at what is called Heinhold's place one and one-half miles from defendant's home, between which and Heinhold's deceased lived, a half a mile from the latter place. There was evidence that slight decomposition of the body had ensued, and that the bullet which caused his death entered under the left shoulder blade and came out · at the left breast of deceased. The only examination of the body or of the wound was by neighbors who assisted at the inquest or funeral. No expert testimony was offered as to length of time he had been dead, and the witnesses were uncertain in their opinions on the subject. There was evidence that he was last seen alive on the afternoon of Sunday, May 29, 1904, and it was the opinion of witnesses that he met his death on that day.

There was testimony of defendant's whereabouts on Sunday and Monday, given by his mother and sister and brother and other persons. No one saw him in the vicinity of the Heinhold place on Sunday or Monday. The uncontradicted testimony was that he was hunting cattle with his brother and a neighbor all day Monday; that he remained at home on Sunday until half-past 1 in the afternoon, when he and his sister and brother left home on horseback, having started for Mariposa. About half-past 2 they parted company, defendant going toward Whitlock, in an opposite direction from deceased's cabin. Defendant was next seen at Whitlock, some of the witnesses fixing the time between 3 and 4 P. M. of Sunday, where he remained until evening, and reached home about 7 P. M. that day. He left home unarmed. Defendant assisted at the burial of deceased, and nothing unusual was observed in his manner. Several witnesses testified that the general reputation of defendant for peace and quietness in the community was good. About the 10th of June, 1904, defendant went to San Francisco, having sold some or all of his cattle, and went to work there. In September, Deputy

Sheriff Walters, of Mariposa county, having for some rea-
son suspected that defendant was connected with the death
of the deceased, went to San Francisco and, without diffi-
culty, found defendant and made appointment to meet him,
at a place named, that evening.   Defendant met him and was
brought into conversation with Detective Thomas Gibson, who
made an appointment with defendant to meet him next morn-
ing at the Hall of Justice.   Sheriff Walters called for him
the next morning and they went to the Hall of Justice.   Gib-
son testified that he took him into a room and asked him some
questions about his family, where he was stopping, etc.   ''Then
I told him that there was a deputy sheriff down here wanted
him for a murder of a man by the name of Dewey.   Now, I
says, 'I don't want you to convict yourself with your own
words from your mouth, but,' I says, 'if you have killed this
man in self-defense, why,' I says, 'you can tell me about it.
But,' I says, 'if you have not, why I don't wish you to say
anything to me in regards to the matter at all unless you
would see your attorney.'   So then he stated that he had had
some words with this man, and this man came at him with
a hoe, and he shot him with a rifle.   So I didn't question him
any further.''   Gibson brought him back into the main office,
and defendant repeated in the presence of Captain Martin
and the deputy sheriff what he had told Gibson.   None of
the circumstances attending the killing were explained or
called out at this time.   At the trial, defendant testified that
he did not kill Dewey, and was not cross-examined by the
district attorney.   It seems to us that there was absolutely
no evidence, aside from this confession, pointing to defend-
ant's guilt, and there was no evidence establishing the *corpus
delicti.*

The judgment and order are reversed.

Buckles, J., and McLaughlin, J., concurred.