[Crim. No. 1402. In Bank.—September 19, 1907.]

# THE PEOPLE, Respondent, v. CHARLES CRAIG, Appellant.

CRIMINAL LAW—ASSAULT ON OFFICER WITH DEADLY WEAPON—INTENT TO MURDER—REVIEW UPON APPEAL.—Where the defendant was convicted of an assault upon an officer with a deadly weapon with intent to commit murder while the officer was attempting to arrest him, though an order denying a new trial cannot be reviewed upon appeal where the bill of exceptions does not show that motion for new trial was made, yet such review is of no practical consequence where all of the assignments of error are reviewable upon appeal from the judgment.

ID.—RESISTANCE TO UNLAWFUL ARREST—EVIDENCE—LAWFUL ATTEMPT TO ARREST FOR VAGRANCY.—The right of a person to resist an unlawful arrest cannot be denied; but the prosecution, in view of the circumstances of the case, was justified in introducing evidence to show that at the time of the alleged assault upon the officer he was attempting to make a lawful arrest of the defendant and his co-defendant for vagrancy.

ID.—DISTINCT OFFENSE.—The fact that such evidence shows the defendant guilty of a distinct offense, for which the attempted arrest was made, is no objection to the evidence.

ID.—RIGHT OF OFFICER TO ARREST WITHOUT WARRANT—KNOWLEDGE OF VAGRANCY.—Where the arresting officer had actual knowledge of a series of continued acts constituting vagrancy by legal definition on the part of the defendant for a period of three months prior to the arrest, such vagrancy is a species of misdemeanor in which the officer having such complete knowledge was justified in making an arrest without a warrant as fully as in case of any misdemeanor committed or attempted in his presence.

ID.—DEFENDANT NOT CONFINING HIMSELF TO VAGRANCY.—The admitted fact that the defendant would not have been arrested had he confined himself to vagrancy, and that he was believed to have assaulted and beaten a man on the street, cannot make illegal his arrest for vagrancy.

ID.—NATURE OF VAGRANCY.—Vagrancy differs from most other offenses in the fact that it is chronic rather than acute, that it continues after it is complete, and subjects the offender to arrest at any time before he reforms.

ID.—IRRESPONSIVE ANSWER OF OFFICER—HEARSAY—PROPER ARREST—MOTION TOO BROAD—HARMLESS RULING.—Where the sergeant of police testified, without proper response to a question, to hearsay evidence of the act of defendant in beating a man, but properly testified to his instructions to the officer to arrest the defendant

for vagrancy, a motion to strike out the whole answer as non-responsive and incompetent was correctly overruled; and the evidence being responsive as to the vagrancy, the ruling, whether erroneous or not, was harmless.

ID.—TESTIMONY OF WOMAN OF ILL-REPUTE — CORROBORATION OF VAGRANCY.—The testimony of a woman of ill-repute that defendant would come to her house four or five times a week was admissible as corroboration of the charge of vagrancy; but whether technically objectionable or not, such evidence could not have been prejudicial, as the officer had knowledge of his association with prostitutes and having no lawful occupation.

ID.—TESTIMONY OF DEFENDANT—CROSS-EXAMINATION—UNLAWFUL BUSINESS.—Where the defendant testified that he had sublet premises for purposes of prostitution, at a considerable profit, and had purchased a mining location in Nevada, upon which he intended to work when his lease expired, he was asked on cross-examination what other business he had, and was properly compelled to answer that it was gambling; his effort being to show that he was not a vagrant, it was permissible to show out of his own mouth that he had no lawful business.

ID.—SUFFICIENCY OF EVIDENCE — INSTRUCTION PROPERLY REFUSED — Where there was evidence of every element of that species of vagrancy defined by subdivision 6 of section 647 of the Penal Code, the court properly refused an instruction that as matter of law appellant at the time of the assault was not a vagrant.

ID.—ABSENCE OF WARRANT FOR ARREST—ERRONEOUS REQUEST—ASSUMPTION OF DISPUTED FACT.—Where the defendant was arrested for vagrancy on instruction of the sergeant of police, or upon knowledge of his vagrancy by the arresting officer, an instruction requested by defendant, that the misdemeanor of the co-defendant for vagrancy was not in the presence of the arresting officer and that the assault for an unlawful arrest of the co-defendant was justified was erroneous, as assuming a disputed fact, and was properly refused.

ID.—MISCONDUCT OF DISTRICT ATTORNEY.—*Held,* that there was no prejudicial misconduct of the district attorney, and no reason to suppose that he had intentionally misrepresented the testimony, though mistaken as to a matter of fact, of which the jury were the judges, and that his argument as to the offenses of the defendant did not pass the bounds of legitimate censure.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial.    E. C. Hart, Judge.

The facts are stated in the opinion of the court.

R. Porter Ashe, Gaston M. Ashe, and E. S. Wachhorst, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, for Respondent.

BEATTY, C. J.—The defendant and one Charles Mack were jointly accused by information of the crime of assault with a deadly weapon with intent to commit murder. Upon a separate trial defendant was convicted of the crime of assault with a deadly weapon. He appealed from the judgment and from an order denying his motion for a new trial to the district court of appeal, where, by reason of a difference of opinion among the judges, there was a failure to decide the cause, and it has accordingly been transferred to this ·court for hearing and decision.

There is an objection by the attorney-general to any consideration of the appeal from the order, upon the ground that it does not appear from the bill of exceptions that any motion for a new trial was made.

The objection seems to be well founded, according to the decision of this court in *People* v. *Ruiz,* 144 Cal. 251, [77 Pac. 907], and that of the district court of appeal in *People* v. *Frank,* 2 Cal. App. 283, [83 Pac. 578], but in this case it is of no practical consequence whether the objection be sustained or not, since every assignment of error urged by counsel for appellant is reviewable on the appeal from the judgment. Such facts as are essential to a clear understanding of the questions to be considered on that appeal may be briefly stated as follows: About three o'clock in the morning of December 25, 1905, Sergeant Wilson and officer Ryan, of the Sacramento police, entered a saloon in what appears to have been an exceedingly disreputable quarter of that city, for the purpose of arresting the appellant and his co-defendant Mack. They found them drinking at the bar in company with a number of women and other men. Wilson arrested Craig and took him to the sidewalk in front of the saloon, while Ryan, by Wilson's direction, was attempting to arrest Mack, who, with the aid of some bystanders, violently resisted the attempt. Wilson, attracted by the noise, left Craig on the sidewalk and hurried to Ryan's assistance, closely followed by Craig. The evidence as to what ensued is conflicting and confusing, but there was testimony which would warrant a jury in finding that several of the men present in the saloon made common cause with

appellant and Mack in resisting the arrest and in vicious assaults upon the officers, who were speedily overpowered, deprived of their clubs, and otherwise roughly handled.   Appellant and Mack, who had gained possession of the clubs, at one period of the affray concentrated their attack upon Ryan, who was then on the floor, encouraging each other by such suggestions as "Kick the son of a bitch's head off, Buff," (the "Buff Kid" was a familiar nickname of Mack).   The result of the fracas was that Ryan was very badly beaten, both officers disabled, and their prisoners enlarged.   The information against the defendants was based upon the assault on officer Ryan.

There seems to have been some attempt made at the trial to show that the club with which Ryan was beaten by appellant was not a deadly weapon, but the state of the record does not warrant a consideration of that point, and it is not pressed.

The principal defense in the trial court was that the attempted arrest of the defendants was illegal, and that they were justified in such resistance as they made.   The appellant at least defends his acts upon the ground that he was justified in resisting his own arrest and in aiding Mack to resist an unlawful attempt to arrest him.   The facts as to this matter are that the officers had no warrant of arrest for either party, and neither had committed or been suspected of committing any felony.   The only justification which could be alleged for the action of the officers was that the defendants had committed a misdemeanor in their presence.   (Pen. Code, secs. 836-840.) This the prosecution undertook to show as a part of their case in chief, by proving acts constituting the crime of vagrancy, and the main contention on the part of appellant is that the superior court erred in admitting evidence of these acts.

Since the right of a person to resist an unlawful attempt to subject him to arrest cannot be denied, we think there can be no question, in view of the circumstances of this case, that the prosecution were right in submitting such evidence as they could to show that the attempted arrest of appellant and Mack was strictly legal, and certainly the fact that it was put in as a part of their main case, rather than in rebuttal, affords the appellant no ground of complaint.   The only question is whether the evidence offered and admitted was relevant to the issue.   For the fact that the offense was committed in

the presence of the arresting officer being material, if the evidence offered to prove it was relevant, the fact that it also tended to prove that the appellant had committed other substantive offenses distinct from the assault upon Ryan was not a ground of objection to it. We think the evidence was clearly relevant as tending to prove that the arresting officers were personally cognizant of facts constituting the appellant a vagrant within the statutory definition of vagrancy. (Pen. Code, sec. 647, and especially subdivisions 5 and 6.) It was to the effect that for a period of three months prior to the assault charged he had been seen by Sergeant Wilson at all hours of the night, from nine P. M. to three A. M., in and about the saloons clustering around Second and L streets, "McCarthy's," "The Art," "The Palm," and "The Casino," and in the immediate neighborhood of the "Concentration Camps" (a local euphemism for houses of ill-fame). It was to the further effect that he had no visible or lawful business, and that he associated with a reputed prostitute. This was vagrancy, and if vagrancy of this species is a misdemeanor which can be committed "in the presence" of an observer, this misdemeanor, supposing the evidence to be true, was committed in the presence of the arresting officer. If, as a witness, he could testify from actual knowledge to every element of the offense, the offense must have been committed in his presence. And it makes no difference that this species of vagrancy cannot be committed by a single act observable at one point of time. A series of acts extending over a considerable period of time and only constituting a criminal offense because of their continuance and repetition, alone or in conjunction with other circumstances, being capable of observation and actual knowledge by a peace officer, will justify him, when the series of acts is complete, in making an arrest without a warrant as fully as in the case of any other misdemeanor committed or attempted in his presence.

The only thing decided in *People* v. *Denby*, 108 Cal. 54, [40 Pac. 1051], is that the solicitation of alms by a healthy beggar on one occasion does not make him a vagrant or justify a citizen in arresting him. The case did not involve the question here presented, but the implication from what was decided is that habitual begging, known to the citizen, would have made the arrest legal, a point as to which we have no doubt.

A more doubtful question is raised by the uncontradicted evidence of the officers themselves that the real cause of the arrest was not the fact that the defendants were vagrants, but was a report brought to their knowledge that at an earlier hour in the night the defendants had assaulted and beaten a man passing along the street. This offense they had not seen, and upon consultation they concluded that as they could not arrest them for the battery without a warrant they would arrest them as vagrants, known to them to be such. It seems to be generally held that an arrest for a misdemeanor without a warrant cannot be justified if made after the occasion has passed, though committed in the presence of the arresting officer, and it is contended here that according to Sergeant Wilson's own testimony the occasion for arresting appellant as a vagrant had long passed, since if he knew him to be a vagrant at all, he had known it for some time prior to December 25th. On cross-examination Wilson was asked why he had not sooner arrested him for vagrancy, and he made this answer: "I was told by a former administration to not bother these fellows as long as they behaved themselves. On this morning I was notified that this man and Mack had beat up a man by officer Ryan and I says: 'Well, the only thing we can do—we didn't see it—we will go and vag them.'" Whether this is an entirely commendable attitude towards the appellant's class of misdemeanants we need not stop to consider, but we think the admitted fact that the appellant would not have been arrested if he had confined himself to vagrancy did not render his arrest for that offense illegal. Vagrancy differs from most other offenses in the fact that it is chronic rather than acute; that it continues after it is complete, and thereby subjects the offender to arrest at any time before he reforms. Here there was no evidence of reformation, but the reverse, for, according to the evidence, the appellant was comporting himself quite consistently with his usual line of conduct at the moment of his arrest. All this Sergeant Wilson knew, and, having heard that he had ceased to conduct himself peaceably, he had a sufficient reason, as he had a perfect right, to make the arrest at that time.

The appellant assigns another error in this connection. He moved to strike out the above-quoted answer of Sergeant Wilson upon the ground that it was not responsive to his question,

and that it was incompetent, irrelevant, and immaterial. It is contended that the court erred in overruling this motion. The answer of the witness certainly did contain matter which was not strictly responsive to the question. He was not asked why he arrested appellant on the 25th, but only to explain why he had not arrested him sooner, and that part of his answer relating to the reported beating of a man by appellant and Mack went beyond the scope of the question and was hearsay, and therefore incompetent. It was necessary, however, for the appellant, in moving to strike out, to specify the objectionable part of the answer and confine his motion to that, and a part of the answer being strictly responsive and his motion embracing the whole, the court was technically correct in overruling it. (*People* v. *Rodley,* 131 Cal. 242, [63 Pac. 351].) We are satisfied, moreover, in view of all the other testimony in the case, that the jury could have come to but one conclusion as to the guilt of appellant, and that the ruling was harmless.

May Graves, a woman employed in the ''Art Saloon,'' was called as a witness for the prosecution, and, after answering that she knew the appellant, was asked by the district attorney, ''How frequently during that time [the month of December] did you see the defendant?'' The question was objected to as incompetent, irrelevant, and immaterial, and the objection overruled. The witness answered, ''Oh, he would come in the house four or five times during the week, I should imagine.'' It is contended that this answer was seriously prejudicial to the appellant, as tending to degrade his character, and that the district attorney called it out for no other purpose. It seems probable that the district attorney was seeking by this testimony to corroborate the other evidence as to vagrancy, and if so it is by no means clear that the question was objectionable, for if it was material to show that the officers knew that appellant was a vagrant, it was permissible to prove that he was comporting himself as a vagrant in that part of the city comprised in their beat. But whether technically objectionable or not, it is clear that the evidence could not have been prejudicial.

Ryan, the prosecuting witness, was asked, ''Do you know what business he [appellant] was engaged in, if any, during that time?'' and answered, without objection, ''None that I

know of." There would have been no error in permitting this question and answer, even if they had been objected to. The evidence bore directly upon the question as to the officer's knowledge that appellant was a vagrant.

Called as a witness in his own behalf, the appellant, evidently for the purpose of rebutting the evidence as to vagrancy, testified that in July, 1905, he had taken a lease of a certain tenement on Second Street, covering the months from August to December, inclusive, which he had sublet to women for purposes of prostitution at a very considerable profit, and that he had in the mean time purchased a mining location in the state of Nevada, upon which he intended to go to work as soon as the Second-Street lease expired. On cross-examination he was asked if during the running of his lease he had any other business besides letting rooms to prostitutes, and answered that he had other business. He was then asked what his other business was, and compelled, over his objection, to answer that it was gambling. The court did not err in requiring him to answer. His effort was to show that he was not a vagrant, and it was permissible to show out of his own mouth that he had no lawful business.

It is scarcely necessary to add that the court did not err in refusing to instruct the jury as matter of law that under the evidence appellant at the time of the assault was not a vagrant. There was evidence of every element of that species of vagrancy defined in subdivision 6 of section 647 of the Penal Code. Appellant wandered about the streets at late and unusual hours, and his only business—gambling and subletting for purposes of prostitution—was not a lawful business. (Pen. Code, secs. 316-330.)

Neither did the court err in refusing to give the following instruction requested by appellant: "The witness Ryan has testified that he arrested Charles Mack for a misdemeanor, to-wit: vagrancy, and that said misdemeanor was not committed in his, Ryan's, presence and that he had no warrant for such arrest. If you believe said evidence then you must find that said arrest, or attempted arrest, was illegal and unlawful, and I instruct you that the defendant Craig, or any third person, was justified in lawfully interfering to prevent the said Mack's illegal arrest, provided that they did no more than was necessary for that purpose."

In arresting Mack, Ryan acted under the orders of his superior officer, there present, and the legality of the arrest depended upon Wilson's right to give the order, which would not have been conclusively determined by that portion of Ryan's testimony quoted in the instruction, even if it had been entirely unqualified by other portions of his testimony. But, in fact, Ryan testified on redirect examination that he had known Mack to be a vagrant all the time. In view of all his testimony the portion quoted in the instruction may have meant no more than that the beating of a man on the street (which was the real occasion though not ground of the arrest) had not occurred in his presence. Besides the instruction, as requested, was not strictly correct in point of law. The right of one person to aid another in defending against a threatened injury is defined by our statute (Pen. Code, sec. 694), and does not differ substantially from the right as it existed under the common law. He cannot interfere except in aid of a lawful resistance by the person threatened. Here the evidence shows very clearly that Mack was resisting, but it is far from clear that his resistance was confined to lawful means at the time appellant came to his rescue. A court cannot in instructing a jury assume any fact to have been conclusively proven, even where the evidence is without conflict; such a state of the case might render an erroneous instruction harmless, but a court is not required to give an erroneous instruction no matter how harmless it may be.

The alleged misconduct of the district attorney does not call for extended notice. He did in one instance claim in his argument to the jury that appellant had shown by his own testimony that he was living off the earnings of women who had consorted with Japanese. There was no evidence as to consorting with Japanese, but on the objection of counsel the court admonished the district attorney to confine himself to the evidence. He, however, still contended that such evidence had been given by Sergeant Wilson. He appears to have been mistaken, but there is no reason to suppose that he had purposely misrepresented the testimony. In such a case the recollection of the jury as to what the testimony of a witness was must be deemed a sufficient protection to the accused. It is not like the case where the prosecuting officer deliberately and purposely imputes to the accused a distinct and infamous of-

fense regarding which there has been no evidence, and where the court approves his conduct. As to the terms in which the district attorney chose to characterize the offenses of the defendant, we cannot see that they passed the bounds of legitimate censure.

We find no prejudicial error in the record, and accordingly the judgment and order of the superior court are affirmed.

Sloss, J., Lorigan, J., Henshaw, J., Shaw, J., and Angellotti, J., concurred.