[Crim. No. 65. Third Appellate District.—August 15, 1908.]

THE PEOPLE, Respondent, v. NEMO RUSSO, SALVA-
TORE RUSSO, GATANIO RUSSO, ROCCO RUSSO,
PETER CARDINALE, BEN CARDINALE, SALVA-
TORE CARDINALE, and NEMO BUFFO, Appellants.

CRIMINAL LAW—MOTION TO DISMISS INFORMATION—MINUTES OF PRO-
CEEDINGS—JUDGMENT-ROLL—BILL OF EXCEPTIONS—REVIEW UPON
APPEAL.—A motion to dismiss an information, and the minutes of
the proceedings had on such motion, constitute no part of the judg-
ment-roll, and must appear in the bill of exceptions, in order to be
reviewed upon appeal.

ID.—CRIME OF FISHING FOR STRIPED BASS WITH UNLAWFUL NETS—SUF-
FICIENCY OF EVIDENCE—SUPPORT OF VERDICT.—Although there was no
direct evidence that defendants were seen setting unlawful nets, in
fishing for striped bass; yet there was sufficient circumstantial evi-
dence to justify the jury in finding that they were guilty of the
crime charged, and their testimony to the contrary only raised a
conflict, of which the jury were the sole judges.

ID.—SPECIAL INSTRUCTIONS AS TO CIRCUMSTANTIAL EVIDENCE—OTHER
INSTRUCTIONS NOT IN RECORD—PRESUMPTIONS.—An objection that
a special instruction as to circumstantial evidence appearing in the
record was not sufficiently full, shows no error, where it appears
that another instruction was given on the same point which is not
in the record. In its absence it must be presumed that it was cor-
rect, and fully met the case made by that evidence.

ID.—INSTRUCTION AS TO FINDING STRIPED BASS ON LAUNCH OF DEFEND-
ANTS.—The court properly instructed the jury that if striped bass
were found upon the launch of the defendants, it is not of itself
sufficient to prove their guilt, but it is a circumstance which may
be taken into consideration by them in determining guilt or inno-
cence.

APPEAL from a judgment of the Superior Court of
Solano County, and from an order denying a new trial.
L. G. Harrier, Judge.

The facts are stated in the opinion of the court.

G. A. Lamont, and R. H. Latimer, for Appellants.

U. S. Webb, Attorney General, H. F. Peart, for Fish Com-
missioners, and R. J. White, for Respondent.

CHIPMAN, P. J.—Defendants were convicted of the crime of fishing for striped bass with unlawful nets. A demurrer to the information was interposed, and, we think, rightly overruled. Defendants appeal from the judgment of conviction and from the order denying their motion for a new trial.

A motion to set aside the information with an affidavit explanatory of the proceedings had on said motion, the rulings of the court thereon and exceptions thereto, and the minutes of the trial in the magistrate's court, are printed in the transcript, but they are not authenticated in the bill of exceptions.

Appellants claim that the motion to dismiss the information is part of the judgment-roll made up by the clerk under section 1207, Penal Code. The papers which, under that section, constitute the record, or judgment-roll, are: "1. The indictment or information and a copy of the minutes of the pleas or demurrer; 2. A copy of the minutes of the trial; 3. The written instructions given, modified or refused . . . and the certified transcript of the charge of the court; and 4. A copy of the judgment." The motion for a new trial and the minutes of the proceedings had on such a motion constitute no part of the judgment-roll. *People* v. *Sing Yow,* 145 Cal. 1, [78 Pac. 235], where it was also held that "the clerk cannot make them a part thereof, and they should appear only in the bill of exceptions." (See, also, *People* v. *Ruiz,* 144 Cal. 251, [77 Pac. 907] ; *People* v. *Frank,* 2 Cal. App. 283, [83 Pac. 578].) The same is true of the motion to dismiss the information and the minutes relating thereto. They should have appeared in the bill of exceptions, the only means by which they could have been properly authenticated.

It is claimed by defendants that the evidence is insufficient to justify the verdict. Section 634 of the Penal Code is the statute defining the offense charged. It provides that: "Every person who, for the purpose of catching . . . striped bass . . . in any waters of the state, fish with or use any seine or net, . . . the meshes of which are, when drawn closely together and measured inside the knot, less than seven

and one-half inches in length, is guilty of a misdemeanor, and is punishable," and so forth.

Witness Lamontague, a hunter and fisherman, residing in the vicinity of the waters where the alleged illegal fishing occurred, and for many years familiar with the Sacramento river and the numerous connecting sloughs forming the network of islands in that region, testified that he was fishing on June 27, 1905, in Duck slough, and saw the defendants in the morning of that day; witness came down Duck slough trolling for striped bass and noticed three fishing boats and a gasoline launch and seven or eight men engaged in throwing out a net; he observed the net and saw that the meshes were of a size less than allowed by law; he turned around to return to his home for the purpose of reporting the matter to the game and fish warden; the gasoline launch, he testified, "undertook to run over him"; he went to Courtland and telephoned Game Warden George Neale at Sacramento, who came to Courtland that evening at 5 o'clock. There is evidence that Neale, Lamontague and three other men left Courtland that evening in a gasoline launch for the scene of the alleged unlawful fishing; night overtook them at a point below, and the next morning "before daylight" they started up Prospect slough with a gasoline launch procured from the Ryder Island dredger, and about daylight came upon defendants in a body of water called "Hackett Cut" or "Hackett slough." Neale found that he could not get to them with his launch because of the nets in the slough, and so took a rowboat with his party, which could pass over the nets, and some distance above his launch he found defendants with a gasoline launch and three fishing boats. The nets extended for over half a mile, zig-zagging across the cut from shore to shore, and anchored at points with railroad iron and rock to hold the nets in place, the latter so situated that there was no passageway for a launch up or down the cut. Neale testified: "I went up to the gasoline boat and these eight defendants were standing on the deck. I asked if any one of them could talk English; the younger man of the lot answered that he could. . . . I then asked him who owned those nets, and he said that he wasn't keeping cases on those nets. . . . I jumped aboard and placed the defendants under

arrest. We tried to get the launch through and the three boats over the net, but there was such a quantity of them we couldn't do it. We succeeded in dragging the nets to one side enough to get the launch and fish boats out, after being tangled up several times with the screw, and brought them to Rio Vista.'' Neale examined the meshes and found them all much smaller than allowed by law. Except salmon, he noticed all kinds of fish in the nets, and striped bass among them. He found in the defendants' launch three boxes of mixed fish, striped bass included, which bore evidence of having been caught in gill nets such as these, although he could not say they were caught in these particular nets. There were other circumstances testified to tending to connect defendants with placing the nets where they were found, and tending to show, in connection with the evidence already stated, that the defendants were engaged in fishing with nets of meshes smaller than allowed by law.

All the defendants testified in their own behalf. Three of them testified that they went from Rio Vista up the river with the launch to buy fish; that they did not own the nets, nor did they have anything to do with setting them. The other defendants testified that they went up to these sloughs from Rio Vista, with three fish boats to get wood, and that they had nothing to do with placing the nets in the slough. There was evidence that there was no wood in that part of the country.

No witness saw defendants setting the nets or taking fish from them, but the circumstances proven were such as to warrant the jury in drawing the inference that defendants had in fact committed acts forbidden by the statute, and were guilty as charged. The testimony of defendants created a conflict, but it was for the jury, as the sole judges of the evidence, to reconcile any apparent conflict in the statements of witnesses. It is only in a case where there is an entire lack of evidence that the appellate court will disturb the verdict. (*People* v. *Fitzgerald,* 138 Cal. 39, [70 Pac. 1014], and numerous other cases.)

The remaining points, made by appellants, relate to the special instructions given by the court, at the request of the

jury, after they had retired to the jury-room for delibera-
tion.

The jury requested an instruction as to "whether the de-
fendants have to be positively identified for the offense of
setting out those illegal nets." A juror: "That is, if it
must be proved by direct or circumstantial evidence." The
court: "It must be proved either by direct or circumstantial
evidence. I read to you the difference between direct and
circumstantial evidence. Do you all understand the differ-
ence between direct and circumstantial evidence? Direct
evidence would be the testimony of the witnesses who saw the
net set. Circumstantial evidence would be the evidence of
surrounding circumstances, which would lead you, in reason
and beyond a reasonable doubt, to believe that they did set
the nets, that is the difference." The criticism of appellants
is that this instruction was not sufficiently full and explicit
as to when the jury is warranted in convicting upon circum-
stantial evidence. (Citing *People* v. *Dole*, 122 Cal. 495, [68
Am. St. Rep. 50, 55 Pac. 581].) None of the instructions
given by the court are in the record except the special in-
structions above referred to. The court had given an in-
struction upon the point, as clearly appears, and in its ab-
sence it must be presumed that it was correct and fully met
the case made by the evidence. Without this instruction
before us we cannot say that the court erred in not more fully
explaining the nature of circumstantial evidence. We must
presume that when read together with others the instructions
on the subject thereof were correct.

"Juror: Another question is, in regard to the engineer and
the parties who had the launch, whether they went as fisher-
men or merchants, buying, or in the employ of a merchant
buying; were they classed as fishermen, or as merchants,
buying with those who went with the launch?

"The Court: That question could hardly enter within the
range of the jury; what you are to determine is, whether
these people, no matter in what capacity they were acting,
performed the illegal act, whether they did it."

We discover nothing misleading here. It was immaterial
in what capacity these men in the launch went out; the sole
question was, Did they take part in illegal fishing? The

colloquy between the members of the jury and the court was continued by several other questions of the jury and answered by the court. The absence of the instructions given previously by the court upon the points involved makes it impossible to say that any error was committed by the court. So far as we can judge, there was none. After some statements by counsel upon both sides as to the fish found on defendants' launch, the court said: "I will give the instruction this way: that these defendants are accused of setting nets, for the purpose of catching striped bass. Now, if striped bass are found upon the launch, it is not of itself sufficient to prove the guilt of the defendants, but it is a circumstance which may be taken into consideration by you, in determining guilt or innocence." We see no error here.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.