[Crim. No. 496.  Second Appellate District.—January 16, 1917.]

THE  PEOPLE,  Respondent,  v.  PERCY  TUGWELL,
Appellant.

CRIMINAL LAW — MURDER — TRIAL — UNAUTHORIZED VISIT OF JUROR TO
    SCENE OF HOMICIDE—CHANGED CONDITIONS—LACK OF PREJUDICE.—
    In a prosecution for the crime of murder, the defendant is not
    prejudiced in his substantial rights by the misconduct of a juror
    in visiting the scene of the crime after the court had refused to
    make an order permitting the jury to view the premises, where such
    visit was made some eighteen months after the date of the alleged
    homicide, and the conditions had so changed that no information
    could then be obtained which would corroborate the testimony of the
    prosecution as to the surroundings at the time of the alleged crime.
ID.—EXCLUSION OF SPECTATORS — LOCKING OF DOOR TO COURTROOM —
    FAILURE OF DEFENDANT TO OBJECT — RIGHT TO PUBLIC TRIAL NOT
    AFFECTED.—In such a prosecution the defendant is not deprived of
    his constitutional right to a public trial by the action of the bailiff
    in locking the main door to the courtroom and keeping the same
    locked until after the noon recess, where the same was thus locked

in executing an order of the court to clear the galleries because of a disturbance among spectators, and the defendant's counsel, knowing that the door had been locked, made no objection thereto.

ID.—CONDUCT OF TRIAL—RIGHT OF COURT.—The right of a defendant to a public trial does not prevent the court from removing spectators who create a disturbance which interferes with the orderly conduct of the trial.

ID.—WAIVER OF RIGHT TO PUBLIC TRIAL.—The right of a person accused of crime to a public trial is one for his benefit, which he can waive.

ID.—CORPUS DELICTI—DEGREE OF PROOF.—The rule that the *corpus delicti* must be established before the alleged confession of a defendant is admissible in evidence does not require such proof to be of the convincing character necessary to support a conviction.

ID.—INSTRUCTION AS TO MANSLAUGHTER — LACK OF PREJUDICE.— In a prosecution for murder, where the evidence shows murder in the first degree, error in instructing the jury on the law of manslaughter is favorable and not prejudicial to the defendant, as in view of the code definitions of murder and manslaughter it must be assumed that the jury would have convicted the defendant of murder if such instruction had not been given.

ID.—MURDER BY POISON — PURPOSE OF ROBBERY — MANSLAUGHTER— ERRONEOUS INSTRUCTION.—In a prosecution for murder, where the evidence shows that the crime was committed by means of poison for the purpose of robbery, which is defined by section 189 of the Penal Code as murder in the first degree, it is error to instruct the jury on the law of manslaughter, though that crime by section 1159 of such code is included in the crime of murder.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Earl Rogers, H. L. Giesler, and Frank E. Dominguez, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

SHAW, J.—Upon a charge of committing the crime of murder, in that he did willfully, unlawfully, and with malice aforethought kill one Maude Kennedy, defendant was convicted of manslaughter. He prosecutes this appeal from the judgment and an order of court denying his motion for a new trial.

There was a former trial of the case which resulted in defendant being convicted of murder in the first degree, following which sentence of imprisonment for life was pronounced upon him. On appeal that judgment was reversed. As presented by the record herein, the facts concerning the homicide and the circumstances pointing to defendant as the one who committed the crime are substantially the same as exhibited by the record on the former appeal, wherein a full and complete statement of the case is set forth in the opinion there filed. (See *People* v. *Tugwell*, 28 Cal. App. 348, [152 Pac. 740].) Referring to that opinion for a statement of the case, we shall here, in discussing the errors assigned, confine ourselves to such reference to the evidence as may be necessary to illustrate the points made by appellant.

The theory of the prosecution, and which the evidence tended to prove, was that defendant was in need of money to enable him to marry and accompany his bride to San Francisco; that to obtain the needed funds he planned to rob Mrs. Kennedy, a woman twice his age, of diamonds of which he knew she was possessed; that for the purpose of using it in the perpetration of the crime he procured from a clothes-cleaning establishment, where he had been employed, a bottle of chloroform of the kind there used; that by a request made by telephone he induced his intended victim to go to the lonely place appointed therefor, where he met and murdered her by forcing chloroform into her mouth, and took the diamonds which she had in a chamois bag fastened around her neck.

One of the grounds upon which the motion for a new trial was based was misconduct of the jury. It appears from affidavits filed that after the court had refused to make an order permitting the jury to visit and view the premises, where the homicide occurred at about 9 o'clock on the evening of August 31, 1914, a juror during the trial, on March 31, 1916, in the daytime, visited and viewed the place and surroundings. That the visit of this juror was an irregularity constituting serious misconduct and deserving of severe censure, admits of no question. (*People* v. *Mitchell*, 100 Cal. 328, 332, [34 Pac. 698]; *People* v. *White*, 20 Cal. App. 156, 159, [128 Pac. 417].) But misconduct of a juror *per se* will not justify the granting of a defendant's motion for a new trial. (*People* v. *Hope*, 62 Cal. 291; *People* v. *Kramer*, 117 Cal. 647, [49 Pac. 842].) Prejudice to his substantial rights must be

shown to have resulted from such act of misconduct. (*People*
v. *Yee King*, 24 Cal. App. 509, 511, [141 Pac. 1047].) The
scene of the alleged crime and place where the body of Maude
Kennedy was found on the morning of September 1st was at
or near an alley-way surrounding which at the time were
vacant and unimproved lots and lands. Two witnesses tes-
tified that at about 9 o'clock on the evening of August 31,
1914, while passing near this point, at or near which there
was an electric light burning, their attention was attracted to
a man and woman who at the place in question appeared to
be engaged in a struggle. Neither of these witnesses pre-
tended to identify defendant as the man whom they saw.
It appears from the affidavits filed that the juror visited the
place in midday some eighteen months after the date of the
alleged murder, at which time the vacant lots in the vicinity
had been improved by the erection of buildings thereon, thus
changing the condition and aspect of the location. Hence
it is claimed that the juror in visiting the scene could not
obtain an adequate or correct impression of the conditions
existing under which the witnesses for the people testified.
This doubtless is true, and suggests the reason why the court
refused to make an order allowing the jury to visit the prem-
ises. Since by reason of the changed conditions the juror
could obtain nothing in the way of impressions calculated to
corroborate the evidence of the witnesses in question, how
could defendant be injured by the unwarranted visit? It is
inconceivable upon the record presented that defendant could
have been prejudiced in his substantial rights by the miscon-
duct of the juror. A consideration of the entire cause, in-
cluding the evidence, convinces us that no miscarriage of jus-
tice resulted therefrom, without which under section 4½ of
article VI of the constitution, the order denying defendant's
motion for a new trial upon this ground should not be re-
versed.

It is next claimed that the defendant was, by an order of
court, deprived of his constitutional right to a public trial.
In support of this contention, affidavits were filed which, not-
withstanding some conflict therein, tended to prove that dur-
ing the trial, while the evidence was being introduced, there
was a disturbance and disorder among the spectators sitting
in the body of the courtroom; that about 11:30 A. M. the
court ordered the bailiff to "clear the galleries"; that there-

upon the bailiff caused the persons sitting in that part of the courtroom reserved for spectators (the number of whom is not shown) to leave the room and, without any order so to do made by the court, locked the main door thereto, which door remained locked until the noon recess, which occurred about 12:10 P. M., and thus during said period prevented egress and ingress through the same; that during that time a number of persons—at least fifteen, as shown by one of the affidavits—other than those connected with the trial remained in the room, and while persons who sought entrance through the main door of the courtroom found it locked, some of these, and indeed all who sought the same, entered through the witness-room, the doors of which, unlocked, afforded an entrance from the main hall to the courtroom. According to the affidavit of one of defendant's counsel, he, during the period of forty-five minutes while the door was locked, went from the courtroom through the reporter's room into the main hall some three or four times, at all of which times he examined and found the main entrance door to the courtroom locked, and that on each of these visits he saw persons come to the door of the courtroom, who, upon finding it locked, went away. Nevertheless, counsel, whose duty it was to see that defendant was accorded his constitutional rights, and knowing that the door was not locked by order of the court, not only failed and neglected to call the court's attention thereto, but on behalf of his client made no objection to the closing of the door; on the contrary, as shown by his affidavit, he was unusually alert and active in his efforts to see that it was continuously closed until the noon recess. As stated, there is some conflict in the affidavits as to the number of persons remaining in the courtroom; nor is it made to appear how many were required to leave the room. It does appear, however, that their removal was due to a disturbance and disorder among the spectators, and if, as we must assume to be the case, such disturbance interfered with the orderly conduct of the trial, no question exists as to the right of the court to order them excluded from the room. (*People* v. *Kerrigan,* 73 Cal. 222, [14 Pac. 849]; *People* v. *Swafford,* 65 Cal. 223, [3 Pac. 809]; *State* v. *Nyhus,* 19 N. D. 326, [27 L. R. A. (N. S.) 487, 124 N. W. 71]; *Grimmett* v. *State,* 22 Tex. App. 36, [58 Am. Rep. 630, 2 S. W. 631].) Further, it appears without conflict that persons other than those con-

nected with the court and engaged in the trial remained in the
courtroom, which, according to the affidavit of the bailiff, were
as many as fifteen.    There was no discrimination as to the
presence of those so permitted to remain.    Under these cir-
cumstances, we are of the opinion that the trial as conducted
did not lose its character in the sense that it was public, as
distinguished from a secret or star-chamber trial.

However this may be, and conceding that the action of the
bailiff in locking the door, whether or not with the knowledge
of the court, was, as shown by the record, wholly unwarranted,
appellant is in no position to complain of the bailiff's action.
The constitution, both federal and state, provides that a party
accused shall have the right to a speedy and public trial.
This requirement, says Judge Cooley in his work on Constitu-
tional Limitations, "is for the benefit of the accused; that the
public may see he is fairly dealt with and not unjustly con-
demned, and that the presence of interested spectators may
keep his triers keenly alive to a sense of their responsibility
and to the importance of their functions; and the requirement
is fairly observed if, without partiality or favoritism, a rea-
sonable proportion of the public is suffered to attend, not-
withstanding that those persons whose presence could be of
no service to the accused, and who would only be drawn
thither by a prurient curiosity, are excluded altogether." This
right so accorded by the constitution, like the right to a
speedy trial, being for the benefit of the defendant, may be
waived by him.    "It is a well-settled maxim that a party may
waive the benefit of any condition or provision made in his
behalf, no matter in what manner it may have been made or
secured."    (Broom's Legal Maxims, 547; *Knarston* v. *Man-
hattan Life Ins. Co.*, 140 Cal. 57, [73 Pac. 740].)    As said
in *Goit* v. *National Protection Ins. Co.*, 25 Barb. (N. Y.) 189,
191: "The law will not compel a man to insist upon any bene-
fit or advantage secured to him individually," whether such
benefit be constitutional or statutory.    Like the record in the
case of *People* v. *Swafford,* 65 Cal. 223, [3 Pac. 809], that
here presented is silent in showing whether or not defendant
in express terms consented to the closing of the door.    From
aught that appears to the contrary, he may have done so.
At all events, he did not, as did defendant in the case of
*People* v. *Hartman,* 103 Cal. 242, [42 Am. St. Rep. 108, 37
Pac. 153], upon which appellant relies, enter any objection

to the action of the bailiff, nor call the attention of the court thereto, until during the noon recess, after which there appears to have been no cause for complaint. Under these circumstances, we are constrained to hold, even if the conduct of the trial was lacking in the character of being public in the ordinary sense, that defendant must by his conduct as shown be deemed to have assented thereto and waived any objection on account thereof. There is nothing said in *People* v. *Letoile,* 31 Cal. App. 166, [159 Pac. 1057], which lends support to appellant's contention as based upon this record.

It appears that after his arrest defendant made to several persons statements in the nature of confessions, evidence of which was admitted over the objection interposed upon the ground that the *corpus delicti* had not been established. This ruling, it is insisted, constituted prejudicial error. That the *corpus delicti* must be established before the alleged confession of the accused is admissible in evidence, is a fundamental principle. (*People* v. *Simonsen,* 107 Cal. 345, 346, [40 Pac. 440]; *People* v. *Frank,* 2 Cal. App. 283, 284, [83 Pac. 578]; *People* v. *Tapia,* 131 Cal. 647, 649, [63 Pac. 1001].) The rule, however, does not require that such proof shall be of that convincing character necessary to support a conviction of the crime charged. (*People* v. *Wagner,* 29 Cal. App. 363, 366, [155 Pac. 649]; *People* v. *Jones,* 123 Cal. 65, [55 Pac. 698].) In the case at bar, the death of Mrs. Kennedy, together with *prima facie* proof that her death was due to violence at the hands of some other person—in other words, that it was not due to suicide, accident, or natural causes—was a necessary prerequisite to the admission of defendant's confession that he had killed her. Excluding all proof as to motive and the statements made by defendant, the evidence clearly tends to show that Mrs. Kennedy, in response to a message by telephone, left her home soon after 8 o'clock on the evening of August 31st; that on the morning of September 1st her dead body was found in the alley-way hereinbefore referred to. She was lying on her back, her clothing dusty and disarranged, her waist open in front, and a chamois bag in which she was accustomed to carry her diamonds was found open in the bosom of her dress. One shoe and one glove were off, both of which were found some distance from the body; and some beads, a hatpin, and a cork were found scattered upon the ground in the vicinity where her body was found.

The condition of the ground and her clothing indicated that the body had been dragged for some distance. That a short time prior to August 31st defendant had procured from a boy employed at the dye works where defendant had formerly worked, a bottle of commercial chloroform; that the cause of the death was due to a corrosive, volatile poison forced into the mouth, the irritating effect of which caused strangling and inflammation of the epiglottis, larynx, and trachea; and that commercial chloroform would cause the condition found. It further appeared that at about 8:45 o'clock on the evening of August 31st, one Doris Widemeyer, passing in the vicinity where the body was found, saw two figures in the vacant lot adjoining said alley, one of which appeared to be bending over the other, and heard groans; that another witness at about 9:30 P. M., in passing the vicinity where the body was found, saw a man and woman struggling and heard a mumbling and gurgling sound, and saw a man drag some object down the alley; that they appeared to be engaged in an altercation. In our opinion, the foregoing, leaving out of consideration other circumstances of a probative character, constitutes substantial evidence tending to prove that the death of Mrs. Kennedy was not due to suicide, accident, or natural causes, and hence was the result of criminal violence.

The crime with which defendant was charged was that of murder. The court instructed the jury touching the question of manslaughter, and submitted with other forms of verdict one adopted by the jury based upon such instruction, to which no objection was interposed. While admitting that manslaughter, though defined as a separate and distinct offense by section 192 of the Penal Code, may be included in the crime of murder (Pen. Code, sec. 1159), as to which, where there is any substantial evidence tending to show the commission of such crime, instructions thereon should be given, and that upon a charge of murder a conviction of manslaughter is deemed an acquittal of the higher offense (*People* v. *Gordon*, 99 Cal. 227, [33 Pac. 901]; *People* v. *Muhlner*, 115 Cal. 303, [47 Pac. 128]), counsel for appellant insist that upon the evidence adduced in the case at bar, since it tends only to prove that defendant committed the crime by means of poison for the purpose of robbery, which is defined in section 189 of the Penal Code as murder in the first degree, the instructions should properly have been limited to such degree of the crime.

In support of their contention they cite, among other cases, that of *People* v. *Wright,* 167 Cal. 1, [138 Pac. 349], where the question involved death resulting from the performance of an unlawful abortion, the court saying: "Under our law, where death results from the performance of an unlawful abortion, the crime is murder in the second degree. (Pen. Code, sec. 189.) So if a defendant thus charged rests simply upon a denial of the offense, and no evidence of a lesser offense is before the court and jury, the instructions should go simply to murder in the second degree, and the verdict should be either guilty as charged or not guilty"; and *People* v. *Rogers,* 163 Cal. 476, 482, [126 Pac. 143], and that of *People* v. *McNutt,* 93 Cal. 658, 659, [29 Pac. 243], in the last of which it is said that section 1159 of the Penal Code "contemplates the conviction of a defendant for the lesser offense, when the evidence is insufficient to justify a conviction for the greater offense charged." Upon these and other authorities cited by appellant, we are of opinion that the court erred in giving to the jury the instruction complained of; indeed, it may be conceded that had the court refused at the request of defendant to give an instruction touching the question of manslaughter, the ruling upon review of the record would have been sustained. (*People* v. *Turley,* 50 Cal. 470, *People* v. *Lee Gam,* 69 Cal. 552, 555, [11 Pac. 183], and *People* v. *Rogers, supra.*) The error in giving the instruction, however, does not entitle defendant to a reversal of the order appealed from, for the reason that section 1404 of the Penal Code provides that a verdict shall not be set aside and a new trial granted on the motion of a defendant, except for some omission or error prejudicial to his substantial rights. Murder is defined as "the unlawful killing of a human being, with malice aforethought" (Pen. Code, sec. 187); while "manslaughter is the unlawful killing of a human being, without malice." (Pen. Code, sec. 192.) The unlawful killing, while the *sole essential* element of manslaughter, is an essential element of murder, to which, however, to constitute the latter crime, must be added that of malice aforethought. The greater offense, that of murder, includes all of the elements of the lesser, namely, that of manslaughter. The sufficiency of the evidence to prove that defendant unlawfully killed deceased is not and cannot be questioned. This being true, and conceding, as claimed by appellant, that *if defendant was*

*guilty of the unlawful killing,* such act was by the evidence
conclusively shown to have been accompanied by malice afore-
thought, thus making it murder in the first degree, how can
it be said that he was prejudiced because the jury, due to the
erroneous instruction, did not, as it should have done, find
him guilty of the greater offense? Counsel for appellant
say the jury might have disagreed, but we cannot indulge in
such presumption. On the contrary, since the jury found
that defendant unlawfully killed Maude Kennedy, the pre-
sumption is that, had the instruction complained of not been
given, the jury would have found him guilty of murder.
Therefore, conceding the effect of the erroneous instruction
was to cause the jury to bring in a verdict for a lesser offense,
nevertheless defendant is in no position to complain, since he
is not prejudiced by reason thereof. It has been repeatedly
held in this state that a defendant cannot complain where the
determination of his case is more favorable to him than the
evidence warrants. (*People* v. *Muhlner,* 115 Cal. 303, [47
Pac. 128].) Appellant insists, however, that this doctrine is
based upon cases where the charge was that of burglary and
the evidence conclusively established burglary in the first
degree, notwithstanding which the verdict of the jury was
that defendant was guilty of burglary in the second degree.
(*People* v. *Barnhart,* 59 Cal. 381; *People* v. *Maroney,* 109 Cal.
277, [41 Pac. 1097] ; *People* v. *Coulter,* 145 Cal. 66, [78 Pac.
348] ; *People* v. *Lowen,* 109 Cal. 381, [42 Pac. 32].) And he
undertakes to distinguish these cases from the one at bar by
directing our attention to the fact that the attack made in
such cases was upon the ground that the verdict was contrary
to the evidence, while here the complaint is based upon an er-
roneous instruction which brought about the verdict. We are
unable to perceive any difference in the effect of the error,
whether the unwarranted verdict be due to a want of proper
consideration of the evidence by the jury under an instruction,
or such lack of consideration without the instruction. The
absence of prejudicial effect as to defendant is the same in
either case, and if in the one case, as conceded by appellant,
the court will not upon a review of the evidence set aside a
too favorable verdict because defendant is not injured, it must
likewise follow, in applying the same principle and for the
same reason, the court will not set aside the verdict upon com-
plaint that it followed as a result of an erroneous instruction

more favorable to defendant than that to which he was entitled.

In *People* v. *Muhlner*, 115 Cal. 303, [47 Pac. 128], a number of cases from other jurisdictions, together with text-books, are cited in support of the proposition that "a verdict contrary to instructions—for a less degree of the offense than the evidence proves, must be received and carried out. A new trial cannot be ordered. . . . A conviction of a lesser offense (necessarily involved in the indictment) than called for by the evidence is not cause for granting a new trial, or for reversal on appeal." As in the case of *People* v. *Huntington*, 8 Cal. App. 612, 614, [97 Pac. 760], counsel for defendant do not claim that the evidence is insufficient to support a verdict of murder, but they in effect insist that the evidence shows the crime to have been murder, as to which charge he has been acquitted. Giving full force and weight to the contention of counsel, it must follow from a reversal of the case upon the ground that the error brought about the conviction of defendant for manslaughter, that upon a new trial he could not be convicted of murder (*People* v. *Muhlner*, 115 Cal. 303, [47 Pac. 128]), and hence might with advantage to himself aid the prosecution in establishing the commission by him of a most heinous murder, which would exclude any theory upon which a verdict of manslaughter could be based, and thus, since he could not be convicted of the greater crime, insist upon a verdict of not guilty. As said in the Huntington case: "We do not think it incumbent on the court to give such narrow, technical interpretation as to the true meaning of the statute. If the killing was unlawful with malice aforethought, it was murder, and it was also manslaughter, because, by the very definition of the statute, it was the unlawful killing of a human being." Since the jury might very properly, upon the evidence adduced, have found defendant guilty of murder in the first degree, the error redounded to his advantage, rather than to his prejudice.

The judgment and order appealed from are affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 15, 1917.