(No. 13202.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY KLEIN, Plaintiff in Error.

*Opinion filed April 21, 1920.*

1. CRIMINAL LAW—*when right to discharge for want of warrant is waived.* One arrested by a police officer without a warrant waives his right to be discharged, where, instead of making a motion for his discharge on the day a warrant is issued and served, he moves for a continuance.

2. SAME—*when a bill of particulars is not necessary.* The requirement of a bill of particulars rests in the discretion of the court, and there is no necessity for such a bill where the various allegations of an information amount to only one charge and are intended to bring the defendant within the definition of a vagabond, as contained in the statute referred to in the information.

3. SAME—*oral testimony of previous offenses is not admissible against defendant charged with being a vagabond.* On the trial of a person charged with being a vagabond it is error to permit witnesses to testify, over objection, that defendant had been previously fined and had been arrested several times for disorderly conduct.

4. SAME—*what necessary to convict defendant of being a vagabond.* A defendant who is charged with being a vagabond, as de-

fined in section 270 of the Criminal Code, cannot be convicted solely on testimony that he is reputed to be a pick-pocket; but the fact that he is a pick-pocket or is otherwise within the terms of the statute must be proved beyond a reasonable doubt.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding.

JAMES F. FARDY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, SUMNER S. ANDERSON, and EDWARD E. WILSON, for the People.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

On December 3, 1918, a jury in the municipal court of Chicago found Harry Klein guilty in manner and form as charged in an information which averred that he was an idle and dissolute person and was habitually neglectful of his employment and calling and did not lawfully provide for himself and neglected all lawful business and did habitually mis-spend his time without giving a good account of himself, and that he was known to be a pick-pocket, having no lawful means of support, and was habitually found prowling in and loitering around thoroughfares, in violation of section 270 of chapter 38 of the Revised Statutes. A motion for a new trial was overruled and he was sentenced to confinement at labor in the house of correction of Chicago for two months. The defendant sued out this writ of error to reverse a judgment of the Appellate Court which affirmed the judgment of the municipal court.

The cause was continued, on the defendant's motion, from November 8 to December 3, when, just before the trial began, the defendant moved to be discharged because he was arrested without a warrant, in violation of the stat-

ute. Section 271 of the Criminal Code makes it the duty of the sheriff and other peace officers to arrest any vagabond, as defined in section 270, upon warrant and bring him before the nearest justice of the peace or police magistrate, or in the city of Chicago before the municipal court, for examination, and it is insisted that an arrest without a warrant is a deprivation of liberty of the arrested person without due process of law. It afterward appeared on the trial that the defendant was arrested without a warrant, but no evidence of that fact was offered on the hearing of the motion and the record shows that a warrant was issued and served on November 8, under which the defendant was held in custody until he gave bail for his appearance. The defendant made no motion to be discharged on November 8, but, on the contrary, moved for a continuance of the cause. By this motion he waived any right he had to be then discharged for want of a warrant.

The defendant moved that the prosecution elect upon which of the charges contained in the information it would proceed, and upon that motion being overruled moved for a bill of particulars, which was denied on the ground that it was too late. The information contained only one charge and was intended to charge the defendant substantially with being a vagabond. There were various allegations tending to bring him within the definition of that character as fixed by the section of the statute referred to in the information, but they all amounted to no more than a single charge supported by these allegations. The requirement of a bill of particulars rests in the discretion of the court, and there was no necessity of such a bill to advise the defendant of the charge he was to meet.

It is insisted that the defendant was not proved guilty beyond a reasonable doubt. Klein was standing up against a building on Clark street, near VanBuren, with George Williams, about noon, when a police officer, who did not know Klein and had never seen him, walked up and asked

him what he was doing there. Klein said he was just com-
ing from the Maxwell street court, they were going down-
town to find out when their case had· been continued, they
had been arrested and were up for trial and he had de-
manded a jury trial. The officer had no further conversa-
tion but took Klein to the bureau of identification. The
next morning at roll call he heard Klein questioned by ser-
geant McGuire, who asked Klein what his business was,
and Klein said he was a cigar maker. When questioned
as to where he was working now he said, "I am selling
cigars now," and when asked, "Where did you sell the last
lot of cigars?" he made no answer, and that was all the
conversation with Klein the officers had at that time or any
other time. The officer had no warrant for the plaintiff in
error, did not know him, had never seen him, and Klein
was doing nothing but standing there against the wall.

James O'Brien, a detective sergeant, who had known
Klein about a year prior to the arrest, was with the officer
who made the arrest. He testified that he asked Klein what
he was doing for a living, and Klein said he was a cigar
maker,—"No, I am not a cigar maker; I am a salesman."
When asked to whom he sold any cigars he said, "I am not
working at all," and told the witness that it was none of his
business when he last worked. This conversation O'Brien
said took place at Clark and VanBuren streets at the time
of the arrest. He testified that the defendant's occupation
was a pick-pocket, and that he had not seen the defendant
for a year prior to the arrest, had never seen him pick any-
body's pocket, but that he knew about Klein's occupation of
his own knowledge, by conversations with him which satis-
fied O'Brien that he was a pick-pocket; that Klein told him
he was arrested for picking pockets, and a person is judged
by his company.

Another detective sergeant testified, over the defend- ·
ant's objection, that he arrested the defendant on April 8,
1917, and to the question, "What did you arrest him for?"

stated that he watched Klein and another man on a Halsted street car from VanBuren street to Randolph street and took them off the car there and brought them to the DesPlaines street station. The lieutenant let the other man go but the officer took the defendant to court. He was asked what disposition was made of the case, and it was objected that that was not the proper way to prove the record, if there was one, but the court overruled the objection, stating that if he was present and knew of his own knowledge he might answer. The witness testified that the defendant was fined $25 and costs. The witness never arrested him at any other time, did not know what his occupation was and had no conversation with him regarding it. On cross-examination he testified that he held the defendant for investigation to see if he could find someone whose pockets had been picked but he could not find anyone, and then he took the defendant to the court on a disorderly charge and next morning Klein was charged with disorderly conduct.

Another policeman testified that he arrested the defendant, with George Williams, on May 25, 1918, and that Klein was a peddler at that time. The officer arrested them as they were walking up the street in the evening, for disorderly conduct, on suspicion. He never saw Klein or Williams before. It was kind of late in the evening, and he thought they were suspicious-looking and brought them in. Klein was discharged.

John E. White, a police officer, arrested the defendant, with two others whom he called pick-pockets, on March 9, 1916. He took them out of a street car at Ninety-second street and Commercial avenue. They were fined $10 and costs on a charge of disorderly conduct. The officer testified that the defendant said he was working as a salesman, but the officer found from his record and from their admissions that they were pick-pockets. The officer took the men to the bureau of identification, but they told him he didn't have to go to the bureau; that they were not work-

ing in his district,—they were working between East Chicago, Hammond and Gary. "We just came through your district and got on the Burnside car to get out of your district." The officer had not seen Klein since, except once on a Clark street car about three months after that. He was in court then and Klein was charged with vagrancy and was discharged.

This was all the evidence of the prosecution. The plaintiff in error produced a witness, George Rentz, who testified that he was in the fruit commission business, wholesale and retail, and that the plaintiff in error was employed by him during the preceding four months in the capacity of peddling to private customers; that his hours were from seven o'clock in the morning to four or five in the evening, depending upon when he sold out, and that he got a salary, the amount of which was not stated. He could not state when Klein started to work but thought it was in August. The witness did not know where the defendant lived. The defendant did not testify on the trial.

There is no evidence that the plaintiff in error did not lawfully provide for himself. There is no evidence that he habitually mis-spent his time in the manner mentioned in the statute,—that is, by frequenting houses of ill-fame, gaming houses or tippling houses. There is no evidence that he did not give a good account of himself, as required by the statute, which applies in this particular only to persons lodging in or found in the night-time in out-houses, sheds, barns or unoccupied buildings or lodging in the open air. If the evidence shows him to be an idle and dissolute person it does not show him to be one who goes about begging, which is a requirement of the statute before such a person shall be deemed and declared to be a vagabond. If he is known to be a pick-pocket it is not shown that he had no lawful means of support. There is no evidence that he was habitually or ever found prowling around any crowded thoroughfare or any of the other places mentioned in the

statute. It is not shown that Clark street, at the time when and place where he was arrested, was a crowded thoroughfare. The court erred in permitting witnesses to testify, over the objection of plaintiff in error, that he was fined. It was error to admit evidence that he had been arrested several times for disorderly conduct. It is possible that he is a pick-pocket and that he is known to be a pick-pocket. If so, it is necessary, in order to convict him, that these facts be proved beyond a reasonable doubt, and this was not done. A pick-pocket is not necessarily a vagabond under the provisions of the statute. In order to convict the defendant of being a vagabond under section 270, upon the information filed in this case, it was necessary to aver and prove that he was an idle and dissolute person who went about begging; or that he was habitually neglectful of his employment or calling and did not lawfully provide for himself; or that he was idle and dissolute, neglected all lawful business and habitually mis-spent his time in the manner mentioned in the statute; or that he was found lodging or found in the night-time in the places mentioned in the statute and did not give a good account of himself; or that he was known to be a pick-pocket either by his own confession or otherwise; or by having been convicted of a crime punishable by imprisonment in the penitentiary or house of correction, and had no means of support and was habitually found prowling around the public places mentioned in the statute, which include crowded thoroughfares. No one of these charges was proved by the evidence. It is doubtful whether any one of them was properly alleged,—certainly most of them were not,—and it was error for the court not to grant a new trial because the verdict was not supported by the evidence.

The judgment of the Appellate Court will be reversed and the cause will be remanded to the municipal court of Chicago.                    *Reversed and remanded.*