Argued September 8, 1967, affirmed January 17, petition for
rehearing denied February 13, 1967

# STATE OF OREGON, *Respondent, v.*
# LaNEVE YVONNE PERRY,
*Appellant.*

436 P. 2d 252

*Oscar D. Howlett,* Portland, argued the cause and filed a brief for appellant.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before McAllister, J., Presiding, and Sloan, O'Connell, Goodwin, Holman, Lusk and Woodrich, Justices.

O'CONNELL, J.

Defendant appeals from a judgment of conviction of the crime of vagrancy in being a common prostitute (ORS 166.060).

A police officer with the vice division of the Portland Police Bureau, struck up a conversation with defendant in a Portland bar. He asked her if she knew the whereabouts of a certain girl (a prostitute with whom he had previously made contact). Defendant said, "Maybe I better be talking to you." The rest of the episode was described by the police officer as follows:

"A * * * [T]hen she says, 'Are you looking for a girl?' Or a lady, one of the two, and I says, 'Yeah, I guess I am.'

"And she says, 'Well, how much do you want to spend?' And I says, 'How much will it cost me?' And then she told me it would cost me $20. So I asked her, 'Well, what will I get for $20?' And she says, 'Well, whatever you want.' So then I asked her what was her specialty. She says, 'Well, half and half, straight lay.' I says, 'How about a straight lay for the $20?' So then she asked me if she could finish her drink and I says, 'Sure.'

"And then we went on to a conversation—I asked her where we were going to go and she says, 'We can go next door to the Anna Maria Hotel.' So I says, 'Okay.' Then she finished the drink and we proceeded out. She took the lead and I went after her.

"On the way over to the hotel, I told the defendant, I says, 'I'm married.' I says, 'I don't want any of this to get out. Is this place all right?' And she says, 'Yeah. They don't ask any questions in here. They know what's going on. So, it's all right.'

"And when we went in, she paid the $4 for the room and signed the register. It was either Mr. and Mrs. James Smith or John Smith. I can't re-

call the first name she used right now. But, then, he gave us the key to the room. I believe it was 203.

"* * * * *

"A * * * [A]pproximately 15 minutes had passed by, between the time we left or when I first made contact and the time that we went into the hotel. Approximately. I couldn't be sure, though.

"* * * * *

"A The man registered us in at the desk. We went up to Room 203. When we were in there, I asked her, I says, 'Do you want the money now or after we're finished?' And she says, 'I want it now.' So, I gave her the $20.

"And she says, 'Okay. Go ahead and get undressed.' In the meantime, while she's saying this, she was disrobing herself. I disrobed down to my shorts. She says, 'Come over here and be washed.' She took ahold of my private area and washed it, and I told her I was a vice officer and she was under arrest."

Defendant contends that ORS 166.060 is unconstitutionally vague, providing no standard by which to determine who is a "common prostitute."

■■ It is important to note that ORS 166.060 (1) (d) does not purport to proscribe and make punishable a specific act of prostitution; it defines the crime in terms of the defendant's status or condition. The crime "consists not in proscribed action or inaction, but in the accused's having a certain personal condition or being a person of a specified character."[1] We can see no way of construing subsection (d) of the statute as proscribing only the specific act of prostitution. The state makes out its case under the statute only if it can

---

[1] Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv L Rev 1203 (1953).

prove that the defendant has the status of a "common prostitute."

■ Logically, proof of status could be supplied by evidence of prior acts of prostitution and it would not be necessary to prove that the accused engaged in the particular act of prostitution for which she was ostensibly arrested.[2]

■ It is not necessary for us to decide whether prior acts of prostitution alone, without proof of the specific act of prostitution for which the accused is arrested, would constitute sufficient proof of the crime defined by ORS 166.060 (1) (d) because, in the present case, the evidence of defendant's acts and the circumstances surrounding the arrest clearly demonstrated that she was a "common prostitute."[3]

■■ It is defendant's position that the state is required to prove multiple acts of sexual intercourse for gain in order to make out the charge of vagrancy as a common prostitute and that this evidence was lacking in the present case since there was proof only of a

---

[2] See People v. Craig, 152 Cal 42, 47, 91 P 997, 1000 (1907):

"* * * Vagrancy differs from most other offenses in the fact that it is chronic rather than acute; that it continues after it is complete, and thereby subjects the offender to arrest at any time before he reforms."

It has been held that proof of the defendant's general reputation in the community is sufficient to sustain a charge of vagrancy. Hirsch v. Cincinnati, 29 Ohio C Dec 613 (Ct App 1915). *Contra,* People v. Klein, 292 Ill 420, 127 NE 72 (1920); State v. Stone, 96 Minn 482, 105 NW 187 (1905).

It is argued by one writer on criminal law that even if the defendant had reformed at the time of her arrest, she could still be charged with the violation of the *statute* on the ground that a crime once committed is not obliterated by reformation. Perkins, The Vagrancy Concept, 9 Hastings L J 237, 260 (1958). But compare Lacey, supra note 1 at 1216.

[3] A requirement of proof of a specific act of prostitution would eliminate the danger of arresting a person who previously had the reputation of being a common prostitute but has since reformed.

single act of solicitation at the time of the arrest. Although the crime of vagrancy as a common prostitute requires proof of a personal condition or status normally characterized by a continuing course of conduct, it does not follow that the condition or status can be proved only by showing that the accused engaged in a series of acts. If a virgin moves into a house of prostitution, her first act of intercourse for gain places her in the status of a common prostitute, and she thereby becomes a vagrant under ORS 166.060 (d). Her status is shown by the "circumstances under which she performed the single act." This view is expressed in *People v. Scott,* 113 Cal App 778, 783, 296 P 601, 603 (1931), as follows:

> "* * * Conceding that vagrancy is chronic rather than acute, * * * yet we think the existence of such a chronic condition may be ascertained from a single examination, if the characteristic reactions of that condition be found present."

Other cases have held that vagrancy may be established by proof of a single act.[4]

■ The feature which distinguishes a prostitute from other women who engage in illicit intercourse is the indiscrimination with which she offers herself to men for hire. The term "common" is frequently used to describe this indiscrimination, and thus the term becomes a redundancy in the expression "common prosti-

---

[4] In People v. Babb, 103 Cal App2d 326, 330-31, 229 P2d 843 (1951) where defendant was charged with vagrancy as a lewd or dissolute person, the court said:

"* * * A single act of lewdness or dissoluteness may be sufficient to constitute a person a vagrant if it is of such a nature as reasonably to justify an inference that no one not of lewd or dissolute character would do such an act even once; and whether the inference may be drawn from the evidence of a single act is a question for the trier of fact."
Commonwealth v. Tomasselli, 257 Mass 479, 154 NE 95 (1926).

tute."[5] There was ample evidence in the case at bar from which the jury could decide that defendant was a person who offered to engage indiscriminately in illicit intercourse. The manner in which she approached officer Wright, the language she used, her knowledge of the arrangement with the hotel, her *modus operandi* after she and Wright were in the hotel room, and other circumstances provide the basis for an inference that she indiscriminately offered herself to men for sexual purposes.

■ In *State v. Gustin,* 244 Or 531, 532, 419 P2d 429 (1966) we held that a single offer of illicit intercourse, without more, was not sufficient to sustain a charge under ORS 166.060 (1) (d). The case was presented in the trial court on a stipulation of facts which simply recited that on a certain date in the city of Portland the accused "did offer to engage in an act of illicit sexual intercourse, for money, with one Robert D. Colyer, not being [her husband] * * *." Although a woman who will offer to engage in illicit intercourse for money with one man is likely to offer her body indiscriminately to others for the same purpose, it is not necessarily so, and without proof from which indiscriminate sexual activity can be inferred the crime defined in ORS 166.060 (1) (d) is not established.

In *State v. Gustin, supra* at 534, 419 P2d at 430, the court recognized that a single act coupled with attending circumstances would be sufficient to prove that the accused was a common prostitute and therefore a vagrant. This is brought out in the following excerpt from the opinion:

"The stipulation discloses but a single offer of

---

[5] E.g., "Prostitution means common, indiscriminate, illicit intercourse for hire." Ferguson v. Superior Court, 26 Cal App 554, 147 P 603, 605 (1915).

illicit intercourse. No circumstances surrounding defendant's offer, or evidence of relevant prior conduct of the defendant, is disclosed in the stipulation from which a reasonable conclusion could be drawn that the defendant was engaged in the practice of offering her body for gainful indiscriminate intercourse."

If there is language in *State v. Gustin* which can be interpreted to mean that evidence showing more than one act is necessary to establish a crime under ORS 166.060 (1) (d), it is now rejected.

The complexities created by the enactment of ORS 166.060 (1) (d) as a crime of personal condition as distinguished from a crime of action present serious questions of their constitutionality as well as difficult problems of procedure and evidence and should prompt the legislature to heed the advice of Professor Sherry in Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision, 48 Calif L Rev 537, 567 (1960):

> "In these circumstances the time is surely at hand to modernize the vagrancy concept or, better yet, to abandon it altogether for statutes which will harmonize with notions of a decent, fair and just administration of criminal justice and which will at the same time make it possible for police departments to discharge their responsibilities in a straightforward manner without the evasions and hypocrisies which so many of our procedural rules force upon them. This may be done by drafting legislation having to do with conduct rather than status, legislation which will describe the acts to be proscribed with precision and which will be free of the hazy penumbra of medieval ideas of social control characteristic of existing law."

The judgment is affirmed.