[Civ. No. 2795.    Third Appellate District.—November 18, 1924.]

## E. Y. FOLEY, Respondent, v. AMERICAN RAILWAY EXPRESS COMPANY, Appellant.

[1] CARRIERS—DELAY IN DELIVERY OF CAR OF GRAPES—SWITCHMEN'S STRIKE.—The fact that a switchmen's strike existed in a city during the shipment of a car of grapes through said city did not excuse the express company from delay in delivery of the car to its destination, where it was not shown that the strike in question directly affected the movement of the car while in said city, or that any effort was made to have on hand, or even that there was on hand, an adequate switching force in said city available for the movement of said car to send it forward without delay.

[2] ID.—ACTION FOR DAMAGES—ROUTING OF CAR—DIVERSION ORDER—CONSTRUCTION.—In this action for damages occasioned by delay in delivery by an express company of a car of grapes which was to be shipped over a designated route, and concerning which, while en route, a diversion order was given containing the language "follow billing," while the diversion order did not, in and of itself, directly refer to the routing of the car, there was sufficient testimony to justify the conclusion that said order was similar to orders then and theretofore in common use and that the understanding of the trade and common use was to the effect that such an order set the routing of the car at large and the carrier had then but one duty to perform as to the routing of the car and that was to send it forward without unnecessary delay; and this interpretation of the words "follow billing" being a question of fact for the trial court to determine, and having been resolved against the defendant, and there being sufficient testimony to justify said conclusion, such conclusion will not be set aside on appeal.

[3] ID. — OCCURRENCE OF NUMBER OF DELAYS — LIABILITY OF DEFENDANT.—In such action, where a number of delays occurred in the course of delivery of the car in question from the point of shipment to the point of destination, the fact that any one of the delays was excusable did not relieve the defendant from liability

1. Strike as excuse for nonperformance of contract of carriage in absence of special stipulation, notes, 12 Ann. Cas. 313; 28 A. L. R. 503. See, also, 7 R. C. L. 743.

2. Deviation of route as affecting liability of carrier, notes, 15 Ann. Cas. 76; Ann Cas. 1914B, 1003. See, also, 4 R. C. L. 812; 4 Cal. Jur. 878.

3 Liability of carrier for loss or deterioration of goods from delay, note, 11 Am. St. Rep. 360. See, also, 4 R. C. L. 737.

on account of the other delays, there having been no intervening agency affecting the shipment in question.

[4] ID.—EVIDENCE—ANSWERS TO QUESTIONS—CONCLUSIONS.—In such action, where, in response to a question, "Was there any unusual or unreasonable delay in the transporting of" the car in question from the point of shipment to a point on the route, "No, sir," was given as an answer, and in response to another question as to the delay of the car in leaving a certain city on the route, the answer was given that "the delay was due to the switchmen's strike," such answers were simply conclusions, and it cannot be said that the jury was wrong in reaching its own conclusions, rather than accepting the conclusions of the witnesses.

[5] ID. — PARTIES — CAPACITY TO SUE — CARMACK AMENDMENT. — The plaintiff having appeared as the holder of the shipping receipt, he was, under the Carmack Amendment, entitled to maintain the instant action.

[6] ID.—CERTIFICATE OF TRIAL COURT APPENDED TO REPORTER'S NOTES —APPEAL—PRESUMPTIONS.—The certificate of a trial court appended to the reporter's notes will, on appeal, be assumed to import absolute verity, in the absence of a showing that it is incorrect.

[7] ID.—BURDEN OF PROOF—INSTRUCTIONS.—In such action, whatever may be the fact as to whether the trial court withdrew all of an instruction, or only the erroneous part thereof, dealing with the question of burden of proof, the jury was not misled where they were properly instructed that "the burden is on the plaintiff not only to show that there was a delay in the transportation of the shipment involved in this action but that such delay was due to the negligence of the defendant."

[8] ID.—ERRONEOUS INSTRUCTION—SECTION 4½ OF ARTICLE VI, CONSTITUTION.—In such action, if any error was committed by the trial court in relation to an instruction dealing with the question of burden of proof, it comes within the purview of section 4½ of article VI of the constitution.

(1) 10 C. J., p. 179, sec. 224.    (2) 10 C. J., p. 84, sec. 87.    (3) 10 C. J., p. 372, sec. 572.    (4) 22 C. J., p. 562, sec. 662, p. 573, sec. 678. (5) 10 C. J., p. 354, sec. 525.    (6) 4 C. J., p. 516, sec. 2291.    (7) 38 Cyc., p. 1785.    (8) 4 C. J., p. 1173, sec. 3202.

APPEAL from a judgment of the Superior Court of Fresno County. J. E. Woolley, Judge. Affirmed.

The facts are stated in the opinion of the court.

8.  See 2 Cal. Jur. 1006.

Alfred Sutro, Pillsbury, Madison & Sutro, and H. S. Marx for Appellant.

Theodore M. Stuart for Respondent.

PLUMMER, J.—At 7 A. M. on the twenty-eighth day of July, 1920, the plaintiff, then the owner thereof, delivered to the defendant at Clovis, a station on a connecting line of the Southern Pacific a few miles from Fresno, car number 1156, loaded with 1,300 crates of fresh Thompson seedless grapes, at which time there was issued by the defendant and delivered to the plaintiff a certain document in the following words and figures, to wit:

"Express Receipt.

. . . . . . Uniform Express Receipt.

The company will not pay over $50, in case of loss, or 50 cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared and charges for such greater value paid.

American Railway Express Co.    ( 3000)
                   Incorporated          ( 1-19)

Non-negotiable Receipt.

Clovis Cal July 28 1920

Received from E. Y. Foley subject to the Classifications and Tariffs in effect on the date hereof, said to contain -1300 crates Thompson Seedless grapes.

Car placed 530 PM July 27th released 7 AM 28th, value herein declared by shipper to be market value subject to delay and owners risk ——— dollars.

(See footnote)

Consigned to J. Schoenburg Chgo Via SP UP CMSTP
                                   $1037.40   55.00  Rfgn.
at Car Are   1156 ********    Charges ********
War Tax   ********

Which the company agrees to carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof accepts and signs this receipt.

E. Y. Foley                    A. N. Peters, Agt.
      Shipper,                    For the Company."

On the back of this receipt were printed a number of conditions and exceptions relating to the limitation of

liability of the company, only one of which, however, is involved in this case, to wit: The defendant excepts liability in the following language: "The act of God, public enemies, authority of law, quarantine, riots, strikes, . . . "

The car of grapes was consigned to J. Schoenburg Co., Chicago, Illinois, and during the period of transportation and while the car in question was at Ogden, a terminal of the Southern Pacific and Union Pacific Railways, diverted by the consignee from Chicago to New York by a certain diversion order worded as follows:

"Diversion Order.
J. Schoenburg Co.
79 W. South Water Street.

United States Food Administration
License Number G-01898          Chicago, July 31, 1920.
Mr. H. C. Glandon,
    Agent Am. Ry. Express Co.

Confirming our 'phone of —— M to M —— Car 1156. Initial: A. R. E. Shipped 7/27; from Clovis, Cal.; Now on Santa Fe, at: Enroute; Consigned to: Ourselves; divert to: Dennis, Kimball & Pope. City: New York; State of: New York; route via: Erie Pier 20. R. R.; providing through rate is protected. Allow inspection. Deliver without surrender of bill of lading on consignee's written order. Special instructions: Follow billing. S. C. 8 8/3 accepted subject to delay.

Yours truly,
J. SCHOENBURG Co.
By WM. RIORDAN.

(Stamped:) Rec'd from —— time —— 11:50 A received by Nelson repeated to ———— time —— 2/31.",

This diversion order directed that the car in question be transported to Erie pier number 20, New York City, and the car reached its destination some time before noon on August 6, 1920, some nine and one-half days being consumed in the transportation of the car.

The action by the plaintiff is based upon the contention that seven days constituted the then ordinary and usual time for the transportation of a carload of grapes by express, to wit, running on passenger train time from Clovis to Erie pier number 20, New York City, was seven days;

that the delay in the delivery of the car was occasioned by the negligence of the defendant, and that in consequence of such delay and negligence on the part of the defendant, the plaintiff suffered a loss in the market value of the carload of grapes in the sum of $2,282.25. It was for the recovery of this amount that the plaintiff prayed judgment. The trial resulted in a verdict for the plaintiff in the sum of $2,275. From this judgment the defendant appeals.

The testimony set forth in the transcript shows that the car was seven hours late in reaching the city of Ogden, and being late, missed train number 6, remained in Ogden some three hours, and then was sent forward over the Union Pacific on train 8 reaching Omaha at 8:45 P. M., August 1st, and there remained until 6:05 P. M., August 2d, a period of some twenty-two hours, when it was again sent forward over the Chicago, Milwaukee, and St. Paul, reaching Chicago at 8:15 A. M. August 3d, remaining in that city until 10:35 P. M. of the same day, and was then forwarded over the Erie, reaching its destination in time for sale at the 7 o'clock A. M. auction August 6, Erie pier number 20, New York City.

A part of the delay on the line of travel between Clovis and Ogden is accounted for in the testimony by the icing of the car, which delay was usual and such as necessarily must have been anticipated by all the parties by reason of refrigeration being necessary to preserve the fruit. Also, a part of the initial delay is accounted for by reason of the transportation of the car over a single track railway for nearly seven hundred miles and the side-tracking of the train to permit the passage of west-bound traffic. Some of these delays appear to have been for the passage of west-bound freight trains. About three hours of the delay between Clovis and Ogden is wholly unaccounted for. There is a statement in a letter written by a claim agent of the defendant introduced in evidence that the seven hours' delay between Clovis and Ogden was "due to heavy traffic," but no testimony to this effect has been called to our attention, and we have found nothing to that effect other than the conclusion of the writer of the letter referred to. The delay on the initial line is admitted and only partially explained and this explanation, of course, constituted matters to be considered by the jury.

69 Cal. App.—43

The delay of twenty-two hours in the city of Omaha is alleged to be excusable by the defendant on account of the routing of the car prior to its leaving the station of Clovis in the state of California. It will be observed that the receipt given to the plaintiff routed the car over the Southern Pacific, Union Pacific, the Chicago, Milwaukee, and St. Paul, and it is alleged on the part of the defendant that this routing was given and designated by the plaintiff. In the receipt in question, after the routing of the car is mentioned, there appears the following: ''Which the company agrees to carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof accepts and signs this receipt,'' and here appears the name of the plaintiff E. Y. Foley as shipper. It will thus be seen that the shipper, whether he did or did not exercise his election or give direction as to the lines over which the car should be forwarded, bound himself only to the conditions printed on the back of the receipt. On the part of the appellant, and as found as a question of fact by the jury and the trial court, it is contended that immediately upon the delivery by the consignee of the diversion order to the defendant at its offices in Chicago while the car was still standing upon terminal tracks at Ogden, Utah, the routing of the car was set at large and that, from the time of the delivery of said diversion order until it was delivered at Erie pier number 20, New York City, there was no binding designation, direction, or contract requirement as to the route the car should follow other than that containing perishable goods, it should be forwarded by the most expeditious available route.

The contention of the plaintiff, in effect, is that the original destination, to wit, Chicago, was east of the Ogden and Omaha terminals, and the fact that the route through the Omaha and Chicago terminals was on the direct line to Erie pier number 20, New York City, does not affect the diversion order, and that the routing of the car was set at large by the order given as fully and completely as though the car, while at Ogden, had been diverted to Denver or some point in Montana. The record shows that the diversion order was given while the car was in the Ogden terminal. It also appears that the customary practice of the Express Company, immediately upon receipt of a diversion order,

was to transmit the order to its agent at the terminal where the car was at the time of the receipt of the order, or the terminal to which it would first arrive, but, for some unaccountable reason, the diversion order in this case was not transmitted by the defendant to Ogden, nor was it sent to Omaha, but was at all times held at Chicago and acted upon only when the car arrived at that terminal. It further appears from the testimony that there was an auction market for fruit at the Chicago, Milwaukee, and St. Paul terminal in the city of Chicago, to which place the car was originally routed, and to reach which place it would necessarily have to travel over the lines of said company. The diversion order changed all this and thereafter it is alleged there remained no reason for holding the car in Omaha in order to forward the same over the Chicago, Milwaukee, and St. Paul lines; that it was the duty of the Express Company, upon the arrival of the car at Omaha, to forward the car on its eastward journey by the first train carrying express matter available to the defendant and that such trains open for use by the Express Company could have been utilized on the very evening that the car of grapes reached the city of Omaha, and within a period of two or three hours and that the holding of the car in Omaha from 8:15 P. M. of one day until 6:05 P. M. of the following day was unnecessary and inexcusable. The testimony also further shows that when the car reached Chicago on the morning of August 3d it remained on the Milwaukee terminal tracks until about 2:35 P. M.; that it was then taken charge of, iced and transferred to the Erie Terminal, reaching that destination at 3:45 P. M., but did not leave the city of Chicago until 10:35 P. M. of August 3d, having reached the Erie terminal too late to go out on the train prior to the departure of what was known as train number 8.

[1]    To excuse this delay the defendant introduced evidence that on April 3, 1920, switchmen's strike was declared which affected the city of Chicago as well as other cities and that this strike was not officially declared off until some time during the early part of September, 1920. But there does not appear to be any testimony whatever that the strike referred to directly affected the movement of the car in question while in the city of Chicago. There is no testimony in the transcript which we have been able to find,

and none has been called to our attention, showing that any effort was made to have on hand, or even that there was not on hand, an adequate switching force in the city of Chicago available for the movement of this car to send it forward without delay.

The appellant relies upon the strike provisions of the express receipt heretofore referred to and cites a number of cases, among them being the recent one of our own state—*American Fruit Distributors* v. *Hines,* 55 Cal. App. 377 [203 Pac. 821]. This case, however, is far from supporting the contention of the appellant in this particular. In the Hines case there was an exception clause in the event of strikes identical with the one at bar. It appears that several carloads of cantaloupes were loaded and sent to the city of Los Angeles to be forwarded to eastern markets, and, that by reason of a switchmen's strike in Los Angeles, the shipment of cantaloupes was allowed to remain standing on the tracks until the cantaloupes were all spoiled. The action was for the value thereof and the defense there was the same as herein, the existence of a strike. The proof in each case appears to be almost identical, being confined simply to the existence of the strike. The court there said: "The mere proof of the occurrence of a strike, however, would not establish freedom from the obligation to respond in damages to the shipper. It would be incumbent upon a carrier asserting that defense to show that, notwithstanding the strike on the part of its employees, it had used every reasonable effort to preserve the shipper's property, to prevent its being damaged, and to cause it to be transported to its destination. Irrespective of limiting conditions in the bill of lading, it has been held that the occurrence of a strike among the employees of a carrier is not sufficient in itself to excuse the latter for failure to deliver goods shipped or to carry the same within a reasonable time to their destination," citing a number of cases.

And, further in the same case, the court expresses the following views: "The effect of allowable limiting conditions in a contract of shipment is but to add to the common-law list of excepting causes modifying the obligation of the carrier as an insurer. It is familiar doctrine that the position of disadvantage occupied by a shipper, who is compelled to relinquish control of his property when he places it in

the hands of the carrier, without ready means of ascertaining and fixing the blame in case of damage or destruction of his goods, is sufficient reason why he should be relieved of the duty of showing what has happened to his property. The evidence of conditions which might establish the exceptional facts necessary to relieve the carrier is within the reach of the carrier, and ordinarily not easily procurable by the shipper. The logic of all rules governing defenses of the nature here considered requires, we think, that the burden of proving exonerating facts be borne by the carrier." To the same effect is the case of *Jonesborough, L. C. & E. R. Co.* v. *Maddy,* 157 Ark. 484 [28 A. L. R. 498, 248 S. W. 911], to which case, as there reported, is appended an annotation collecting a large number of authorities supporting the doctrine which we have hereinbefore set forth.

[2] It is further contended on the part of the appellant that the words "follow billing" in the diversion order appearing under the subdivision "special instructions" constituted a limitation of the diversion order and did not set the routing of the car at large, and that such being the case, it was incumbent upon the appellant to hold the car at Omaha for the period of twenty-two hours in order to send it forward by way of the Chicago, Milwaukee and St. Paul. On the part of the respondent testimony was introduced showing that these words were known to and in the trade referred only to the protective service called for in order to secure the delivery of perishable products in marketable condition, and had nothing to do with the routing of the car. In this instance the protective service consisted of icing and re-icing as occasion required on the journey of the car from Clovis to its ultimate destination. While the diversion order does not, in and of itself, explicitly and directly refer to the routing of the car, there is sufficient testimony in the transcript to justify the conclusion that the diversion order in question was similar to orders then and theretofore in common use and that the understanding of the trade and common use was to the effect that such an order set the routing of the car at large and the carrier had then but one duty to perform as to the routing of the car and that was to send it forward without unnecessary delay. This interpretation of the words "follow billing" is controverted by the defendant,

but, being a question of fact for the trial court to determine, and having been resolved against the defendant, and there being in the transcript sufficient testimony to justify the conclusion so reached, we do not find any valid reasons for setting aside such conclusions.

[3] It is further contended on the part of the appellant that if any one of the three alleged delays was excusable, then and in that case it could not be held liable, even though other delays may be admitted to be negligent. A number of cases are cited where the carrier has been negligent in the transportation of goods, in that the period of time has been so prolonged that the shipment arrived at its destination where by reason of such events as fire or flood, the shipment was destroyed, it being alleged that if the shipment had not been delayed, it would have passed through the station prior to the fire or flood, and thus escaped destruction. In these cases, one of which involved a shipment of goods destroyed by the flood at Dayton, Ohio, and which would have passed through the city of Dayton and escaped the flood had it not been delayed, the doctrine is set forth that the carrier is not liable, and that doctrine is sought to be applied here, however, we cannot agree with the reasoning of the appellant in this particular. It is the negligence of the defendant as a carrier in the transportation of the car in question from Clovis to New York. As we have seen, there was no intervening agency affecting the shipment in question. The negligence set forth, whether occurring once, twice or three times, was always the negligence of the defendant and not the act or occurrence of any intervening or outside agency. Thus, if it be held that the executed delay of the shipment while going over the Southern Pacific lines was not sufficient to justify the jury in finding the defendant negligent in respect thereto, such conclusion could not be held to justify the holding of the car for twenty-two hours at Omaha, when the shipment might have been forwarded within about two hours after reaching that city. That delay could not be made up by any subsequent activity, the sought-for market had by such delay been lost and the further delays, if any, only added to and did not detract from the plaintiff's loss by reason of failure of the car to reach its ultimate destination in time for auction sale upon a favorable market. [4] The

appellant states the conclusions of two witnesses relative to the delay of the car in reaching Ogden, and also the delay of the car while at Chicago. The testimony as to the former is as follows: "Q. Was there any unusual or unreasonable delay in the transporting of the said car 1156 from Clovis, California, to Ogden, Utah? A. No, sir." As to the delay in Chicago, the testimony of the witness as to why the car did not leave on train No. 14, at 1:55 P. M. rather than on train No. 8, departing at 10:45 P. M., was "the delay was due to the switchmen's strike." These answers were simply conclusions and we cannot say that the jury was wrong in reaching its own conclusions, rather than accepting the conclusions of witnesses. As we have pointed out herein, the facts and not the conclusions relied upon to exonerate the appellant should have been presented to the jury.

It is further contended that the plaintiff is not entitled and was not entitled to maintain this action, and that the question of ownership of the grapes should have been submitted by the trial court to the jury, there having been introduced in evidence a letter written by an employee of the plaintiff to the effect that the grapes had been sold to Schoenburg & Company, which testimony was contradicted by the plaintiff, who testified to the effect that the shipment was upon the joint account and interest of Schoenburg & Company and himself. [5] Whatever the fact may be relative to this, the plaintiff appears as the legal holder of the shipping receipt, and under the Carmack Amendment is entitled to maintain this action. This question appears to have been set at rest by the decision of the supreme court of the United States in the case of *Pennsylvania Ry. Co.* v. *Olivit Bros.*, 243 U. S. 574 [61 L. Ed. 908, 37 Sup. Ct. Rep. 468, see, also, Rose's U. S. Notes, Supp.]. It is there held that the words "lawful holder," used in the Carmack Amendment, do not mean and are not limited to the owner of the goods or someone shown to be duly authorized to act for him in a way that would render any judgment recovered in the action against the carrier *res adjudicata* in any other action, but, upon the contrary, the words "lawful holder" mean any person whomsoever who is the lawful holder of the bill of lading or express receipt, and to such a person the Carmack

Amendment declares that the carrier shall be liable for *any* loss, damage, or injury caused whether by the initial carrier or any other carrier along whose line the property moves under the through bill of lading. It is further contended that the judgment should be reversed herein on account of the giving and regiving to the jury of instruction known as number 6. This instruction appears in the clerk's transcript in the following form: "If you should find from the evidence introduced by the plaintiff that there was an unusual delay in the movement of this car, then you are instructed that the burden devolves upon the defendant to explain the delay and to show that it arose from some cause other than defendant's negligence and under such circumstance it is incumbent upon the defendant to sustain such a burden." Marked, given as modified. The modification consisted in striking out that portion of the instruction following the word "burden," to wit: "by the preponderance of proof. Hence if you should further find that the defendant has not sustained such a burden by a preponderance of the evidence, you should find in favor of the plaintiff." It appears by the reporter's transcript that this instruction was read, including all that part appearing in the clerk's transcript as stricken out. That immediately after the reading thereof counsel for plaintiff asked the court for a modification thereof. The court thereupon, as appears from the reporter's transcript, read the instruction as follows: "If you should find from the evidence introduced by the plaintiff that there was an unusual delay in the movement of this car, then you are instructed that the burden devolves upon the defendant to explain the delay and to show that it arose from some cause other than defendant's negligence and under such circumstance it is incumbent upon the defendant to sustain such a burden by the preponderance of proof." Whereupon counsel for plaintiff said: "I will ask that that be eliminated also. The Court: All right. I will eliminate that." [6] Nothing appears in the reporter's transcript as to whether the instruction was or was not reread to the jury after the second modification or whether the instruction was modified or withdrawn entirely. It does appear, however, in the certificate signed by the trial judge appended to the reporter's notes that the instruction, as set forth in the clerk's transcript,

is correct and the one which was given to the jury, and this certificate by the trial court not having been questioned in any manner, or the attention of the trial court having been called thereto, we think it is incumbent upon this court to accept the certificate of the trial court as to what was done, irrespective of the reporter's notes. Not being shown to be incorrect, we must assume upon this hearing that the certificate of the trial court imparts absolute verity.

[7] The clerk's transcript also shows the giving of the following instruction: "The burden is on the plaintiff not only to show that there was a delay in the transportation of the shipment involved in this action but that such delay was due to the negligence of the defendant." Hence, whatever may be the fact as to whether the court withdrew all of instruction number 6, or only the erroneous part thereof, it is evident that the jury was not misled because they were elsewhere properly instructed as to the burden of proof. [8] In view of what has been heretofore said, we think that if any error was committed by the trial court in relation to instruction number 6 it comes within the purview of section 4½ of article VI of the constitution. We do not mean to be understood as saying anything that will encourage either careless or indifferent statements of the law to a jury, but that provision should always be applied where substance would otherwise be sacrificed to supertechnical form, and the technical form of objection in this case is simply 'as to whether the portion relating to the burden of proof by a preponderance of evidence was withdrawn or whether the whole instruction was withdrawn. In either case the appellant stands uninjured. If our conclusions are correct, then it is admitted the damages found by the jury were also correct. We think the judgment should be affirmed and it is so ordered.

Hart, J., and Finch, P. J., concurred.