[Crim. No. 257. Fourth Appellate District.—February 14, 1934.]

THE PEOPLE, Respondent, v. FRANK YOUNG, Appellant.

Leo Gallagher and W. Breedon for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, Thomas Whelan, District Attorney, and Victor C. Winnek, Deputy District Attorney, for Respondent.

MARKS, J.—The evidence in this case discloses that a group of five hundred or more people, members of various organizations, journeyed in a motor caravan from the city of Los Angeles to the city of San Diego on May 30, 1933, for the purpose of meeting to protest against "imperialistic war". They assembled in Newton Park in the city of San Diego on the afternoon of the day in question. Speeches were made and at the close of the meeting the chairman announced that an application had been made to the city council of the city of San Diego for permission to parade, but that the request had been refused. He called for a vote as to whether or not a parade should be held. No negative votes were cast and the leaders commenced to form the assembly in a column of four or five persons abreast. They were carrying many banners mounted on sticks or staffs which had been displayed during the meeting. During the formation of the column for the parade a riot ensued, which members of the San Diego police force attempted to quell. During the course of the riot Police Officer Agnew was struck with a club and very seriously injured, one of his shoulders being crushed and his wrist broken. Police Officer Jensen was struck on the head and on the shoulder with a club and injured. The defendant was arrested and charged with assault with a deadly weapon upon these two officers. He was acquitted of the assault on Officer Agnew, and convicted of a simple assault on Officer Jensen and sentenced to serve sixty days in the county jail. He is here on appeal from this judgment and from an order denying his motion for new trial.

The principal ground urged by the defendant for a reversal of the judgment is that the police officers, including Officer Jensen, made unlawful and unprovoked assaults on the members of the assembly and attempted to make unlawful arrests and were about to injure members of the assembly; that as the officers were committing unlawful assaults upon the members of the assembly and making unlawful arrests, defendant, under the provisions of sections 692, 693 and 694 of the Penal Code, had a right to resist such unlawful assaults and arrests and come to the assistance of the persons about to be injured or unlawfully arrested. It therefore becomes most important to determine whether a breach of the peace or other public offense was committed by civilians in the presence of these officers which justified their intervention and the arrest of the civilians with the use of such force as might be necessary.

An ordinance of the city of San Diego provided in part as follows: "No person shall publicly display any flag, standard or symbol, emblematic of any nation, organization, or doctrine which is likely to provoke a riot or breach of the peace." The ordinance further provided that any person violating any of its provisions was guilty of a public offense.

The members of the assembly in Newton Park carried various banners emblematic of radical organizations, some of which expressed opposition to certain policies of our government. It is clear from the record that the members of the police department present at Newton Park were of the belief that these banners and the sentiments expressed upon them were likely to provoke a riot or breach of the peace if displayed upon the public streets of the city of San Diego.

The defendant urges that the ordinance is unconstitutional and void; that in its attempt to describe a public offense its provisions are vague and uncertain; that the ordinance is a violation of the guarantee of free speech contained in section 9 of article I of the Constitution of the state of California. We agree that the section of the ordinance quoted contains no definite language from which it is possible to determine with any degree of accuracy the flag, standard or symbol, the display of which it attempts to prohibit. A banner which might meet with hearty approval in one locality might cause serious disturbances in another. In this respect the ordinance cannot be sustained. (*In re*

*Hartman,* 182 Cal. 447 [188 Pac. 548]; *People* v. *Mintz,* 106 Cal. App. 725 [290 Pac. 93]; *Whitney* v. *People,* 274 U. S. 357 [47 Sup. Ct. 641, 71 L. Ed. 1095; *Stromberg* v. *People,* 283 U. S. 359 [51 Sup. Ct. 532, 75 L. Ed. 1117, 73 A. L. R. 1484].)

The evidence is clear as to the happenings at Newton Park up to the time of the attempt to form the parade. The testimony is confusing as to the happenings from the moment the disturbance started and furnishes no clear picture of the subsequent events or the sequence in which they occurred. The testimony of several of the officers would indicate that they attempted to stop the parade in which the banners were to have been carried because they believed that the carrying of such banners on the streets of the city of San Diego was contrary to the provisions of the ordinance in question and likely to provoke a breach of the peace or a riot. ■ It has been held that if a public offense has actually been committed in the presence of an officer, and he attempts to make an arrest, though at the time he mistakenly believes a different offense has been committed, he is justified in making the arrest. (*People* v. *Craig,* 152 Cal. 42 [91 Pac. 997].) ■ If, therefore, the evidence supports the conclusion that a riot or breach of the peace was committed in the presence of the officers before they attempted to interfere and they thereupon attempted to make arrests of those guilty of either of these offenses committed in their presence, their attempts to make the arrests would be lawful and resistance to them would be unlawful.

The evidence must be reasonably construed in support of the judgment. If there is competent and material evidence supporting the judgment it must be affirmed even though the truth of conflicting evidence would seem more probable. Much of the evidence supporting the judgment was furnished by the defendant and his witnesses. We see no reason why this evidence should not be accepted by us in support of the judgment. The jury must have accepted much of it as true.

Practically all of defendant's witnesses described the first attack made upon the assemblage about as follows: That a marine sergeant, named Glick, charged the would-be marchers as they formed in parade, striking them with his fists

and a club or billy. The marchers were equipped with sticks and staffs which they used promiscuously together with their fists. One of the witnesses described the start of the riot by Glick as follows: ''A. Well, I say he stood there listening to the speaker and he didn't look east either as I particularly took notice of it. They were all standing with their faces towards the speakers and they were making sarcastic remarks towards the speakers. Mr. Whelan: I object to that— A. (Continuing) —they said they didn't like some of those banners and they would see they would not get outside of the park. Mr. Whelan: Who said that? A. Sergeant Glick said that, and then after the votes were taken and all agreed that we would parade peacefully without obstructing the traffic to the Congregational church at Sixth and A for the indoor mass meeting, the order was given to form in a column and I stepped back about two feet into the line, leaving me about six feet from Sergeant Glick and Officer Bonnet and Officer Jensen, and they were watching at the head of the line and all of a sudden, it seemed like a signal from the front, Glick says, 'Let's go,' and the next thing, in less than a minute, why he came dashing through the middle of the parade forming, striking right and left just like a roaring bull, and I had to spread to let him out, from being hit myself, and he certainly did not go to the aid of any Sergeant Pickering at all or Officer Pickering. By Mr. Gallagher: Can you tell me whether or not he had anything in his hand? A. I can't say as to that, but I know he was swinging desperately to the right and left and hitting the people in front of him with his fist. Q. And did you see him after that? A. Yes, I seen him around in the crowd.'' According to this witness, upon Glick's charge into the crowd, the mêlée was on, the would-be marchers striking with fists, clubs and sticks. Glick was followed by the police officers who used their clubs on the rioters.

It seems evident from this testimony, and that of other defense witnesses, that before the police officers intervened the trouble had started and a riot was taking place. At least there was a large-sized disturbance of the peace and a general fight. Glick was not a member of the police force of San Diego. As a breach of the peace and a riot had been started in the presence of the police officers it became their duty to quell the disturbance and arrest the offenders with-

out waiting for any warrants. (Sec. 836, Pen. Code.) As the rioters were actually engaged in the commission of an offense in the presence of the officers, it was not necessary for them to inform the arrested persons of the cause of the arrest. (Sec. 841, Pen. Code.) In *People* v. *Pool*, 27 Cal. 572, at page 576, it was said: "Where a party is apprehended in the commission of an offense, or upon fresh pursuit afterward, notice of the official character of the person making the arrest or of the cause of the arrest is not necessary, because he must know the reason why he is apprehended."

The particular events surrounding the assault on Officer Jensen may be briefly described as follows: The defendant armed himself with a club described as a two-by-three, between three and one-half and five and one-half feet long. He was seen to strike into six different groups of persons. He struck Officer Agnew, causing the injuries we have already described. Officer Jensen was engaged in a struggle with, or was retreating from, two rioters who were striking him with sticks. The defendant came up behind him and struck him a blow over his temple which caused an abrasion of the skin and cerebral concussion. The blow forced him to his knee. A second blow was struck which hit him on his shoulder, leaving a scar which was visible at the time of the trial. After striking Officer Jensen the defendant fled and was arrested about two blocks from the scene of the riot. There is no evidence in the record that the defendant had been assaulted or threatened with arrest prior to the time he struck Officer Jensen, and that he was not carrying a banner is clearly established. It would seem clear from the evidence that he armed himself with a club and proceeded to promiscuously assault those with whom he came in contact. The injuries to Officer Agnew were particularly serious. His body was in a plaster cast when he testified at the time of the trial. He was more seriously injured than any other person participating in the mêlée. The evidence is ample to support the conviction of the defendant. Indeed, he may consider himself fortunate in not having been convicted of the felonies with which he was charged.

The defendant urges that the trial court committed prejudicial error in limiting the number of witnesses which he desired to call. The record discloses that every witness

who had, or claimed to have, any knowledge of the actual assault upon Officer Jensen was permitted to testify. A large number of witnesses were called by the defendant who knew nothing of this assault but testified concerning the events preceding it, including the speeches made, the formation of the parade and the inception of the riot. The witnesses whom the defendant desired to call would, according to the proffer of evidence made, have testified concerning the assembly at the park, the substance of the speeches, the character of the banners displayed, the attempt to form a parade and the starting of the riot. None of these matters were in dispute as far as the evidence before us discloses except the exact manner in which the riot started. On this question, there was a sharp conflict between the parties. According to the proffer, the witnesses who were not permitted to testify would have corroborated the evidence already introduced by the defendant as to the manner in which the affray commenced. In view of the verdict returned, the jury must have accepted as true the testimony of the defendant's witnesses upon this particular phase of the case. Under these circumstances we cannot see how the defendant suffered any prejudice by the refusal of the trial court to permit these additional witnesses to testify. Under the provisions of section $4\frac{1}{2}$ of article VI of the Constitution of California, the error, if any, was not prejudicial.

 The defendant complains because the court limited his counsel in the length of his argument. Counsel for defendant requested two days in which to argue the case. The trial court granted each side three hours. It is the duty of the trial judge to regulate the proceedings in his court and he has the undoubted right to exercise a reasonable discretion in limiting the length of the arguments of counsel. (*People* v. *Morrell*, 28 Cal. App. 729 [153 Pac. 977]; *People* v. *Prewett*, 40 Cal. App. 416 [180 Pac. 844].) While it took a number of days to try the case, the pertinent and relevant facts were not particularly involved. Counsel for both parties unduly and unnecessarily extended the time of the trial by permitting witnesses to discuss, and themselves discussing, the political beliefs and doctrines of some of the organizations whose members participated in the meeting at Newton Park. We cannot see how this evi-

dence could have been material or competent in the case. Counsel for the defendant devoted much time to a discussion of these beliefs during his argument to the jury. Had he chosen to discuss the material evidence only, it would seem to us that he would have had ample time to review it in the three hours in which he addressed the jury. We can find no abuse of discretion in the action of the trial court in limiting the time for the arguments of counsel to three hours for each side.

■ The defendant complains of the following instruction given by the trial court: "One of the ordinances received in evidence in reference to that, being Ordinance No. 7561, which is open to your inspection, reading from section 1 thereof: 'No person shall publicly display any flag, standard or symbol emblematic of any nation, organization or doctrine which is likely to provoke a riot or breach of the peace.' And from section 5: providing that any person violating any of the provisions of this ordinance is guilty of a public offense."

Immediately preceding the questioned instruction the court gave the following: "You are instructed that every person, who without authority of law, wilfully disturbs or breaks up any assembly or meeting, not unlawful in its character is guilty of a public offense.

"You are instructed that the right to parade is a right which persons have unless prohibited or in some way regulated by law. You are further instructed that a denial of a permit by the city council where no permit is required by law is not a law within the meaning of the previous instruction. Where no instruction is given you on whether or not a permit is required to parade, you are not to consider whether or not there is an ordinance or law covering parading, but are to consider the question of the right to parade on the theory that there is no law requiring a permit to parade."

The trial court very carefully instructed the jury on the right of assembly, the right of free speech, the right to resist attack and the right to resist unlawful arrest, as well as on all other material phases of the case. He did not give any other instruction on whether or not a permit to parade was required in San Diego.

It must be conceded that the questioned instruction was entirely unnecessary and should not have been given. However, under the facts before us we cannot see how it could possibly be prejudicial or have influenced the jury in returning the verdict which it did.

We have considered the other assignments of error and can find no merit in them.

The judgment and order appealed from are affirmed.

Barnard, P. J., concurred.

WARMER, J., *pro tem.*, Dissenting.—I dissent.

I will not make any statement of the facts, as I conceive them to be disclosed by the record, because I do not think such a statement necessary to present my view of the question in issue here.

I am in accord with the majority opinion in holding the ordinance in question unconstitutional. However, with the conclusion holding such instruction unnecessary and not prejudicial, I cannot agree.

Unquestionably, during the whole trial, the prosecution sought to justify the arrest, when the assault occurred, by such ordinance, and the court instructed the jury that the acts attempted to be prohibited by the void ordinance were in fact prohibited by terms of a penal law, and in effect, thereby, instructed the jury that if they found the person sought to be arrested was doing any act forbidden by said ordinance, he was thereby committing a misdemeanor. Inasmuch as it appears that the person sought to be arrested at that time and place was admittedly carrying a banner which, it is claimed, was a violation of said ordinance and that he was doing so in the presence of a police officer who attempted to arrest him then and there, the effect of the instruction was to tell the jury that the act of carrying the banner, if it was a banner the display of which was forbidden by the said ordinance, was a misdemeanor and subjected him to arrest, that he had no right to resist the lawful arrest,—and therefore the defendant had no right to assist him in his resistance.

An unconstitutional ordinance cannot be declared to establish any right. It is void. · It is apparent, from the fact that the ordinance was placed in evidence as a justification

for the attempted arrest and the instruction approving the same, that the jury must consider it and under the admitted facts it is highly probable that it was, in fact, the real issue upon which the verdict was returned.

I do not see how any jury could possibly have returned a verdict other than one of guilty, as they did, with such an instruction before them. However, without such an instruction, I am of the opinion, after a careful consideration of the whole record, that it cannot be determined whether the jury would or would not have returned a verdict of guilty. This being so, I think this error in giving the instruction approving an unconstitutional ordinance was highly prejudicial to the defendant, and of such a serious nature that even the salutary provisions of section 4½, article VI, of the Constitution, cannot be given application to uphold the judgment. (*People* v. *MacPhee*, 26 Cal. App. 218 [146 Pac. 522].

I therefore think the judgment should be reversed and the cause remanded for a new trial.