[Civ. No. 5944. Third Appellate District.—April 13, 1938.]

HOLMES BRUCE, Respondent, v. CHARLES SIBECK et al., Appellants.

U. S. Webb, Attorney-General, and Ralph O. Marron and Emery F. Mitchell, Deputies Attorney-General, for Appellants.

W. H. Hazell for Respondent.

PLUMMER, J.—By this action the plaintiff sought by way of replevin to recover the possession of certain personal property which was seized by the defendants as game wardens of the state of California. The property in question was seized while the plaintiff was illegally operating a set line in violation of section 842 of the Fish and Game Code. The seizure was made at the time of the arrest of the plaintiff for violation of said section of the Fish and Game Code, by reason of his fishing in Clear Lake with a set line 855 feet in length. The property seized included: One Johnson outboard motor,

model K–35, serial No. 56260. One rowboat 16 feet long, 4 feet 6-inch beam, 18 inches deep. One rowboat 13 feet long, 3 feet 2-inch beam, 14 inches deep. Two sets boat oars. One box motor tools. One shotgun. One slicker raincoat. One leather coat. Fishing tackle box and contents.

The record shows that Holmes Bruce, the plaintiff in this action, was arrested and charged in the Justice's Court in and for Township No. 3, Lake County, with violation of section 842, *supra,* and that upon his trial he was found guilty.

From the evidence adduced the court determined that the personal property was designed to be, and was capable of being used to take fish, and was used at the time of the arrest in the commission of the offense charged.

It appears that the trial court, upon the authority of the case of *Santos* v. *Dondero,* 11 Cal. App. (2d) 720 [54 Pac. (2d) 764], held that the act or event giving rise to the forfeiture must be judicially determined before the property could be seized, and that it must appear that the property in question was manufactured for the sole purpose of illegally catching catfish with a set line.

By not limiting the language of the Santos case, *supra,* to the facts therein involved, it would appear that the trial court has been led into error. The facts of the present case are as follows:

On December 20, 1935, while the defendants were patrolling the waters of Clear Lake, they saw the plaintiff, Holmes Bruce, and one Albert See in small boats in the vicinity of Mt. Konocti. As the wardens approached they observed that Bruce and See were fishing with set lines. When Bruce and See observed the game wardens approaching, the set line was dropped overboard and allowed to sink to the bottom of the lake. Being unable to start the motor they rowed away from the spot where they had been fishing. The game wardens, using a drag, located the set line at the spot where the plaintiffs had been fishing and found the set line to be 855 feet long. Half of the set line had been worked over, that is, the fish had been removed and the hooks rebaited. The other half of the line still had fish upon the hooks. After the set line was located Bruce and See were placed under arrest, and as soon as it could be ascertained in what township on Clear Lake the offense was committed, they were charged with the violation of section 842, *supra.* The two

boats, together with the equipment used by Bruce and See, were towed to Peterson's Boat Shop at Nice. Thereafter, on February 5, 1936, Bruce and See were duly convicted in the justice's court, of the crime charged, and an order was made by the justice's court forfeiting the devices and apparatus used in the commission of the offense, to the fish and game commission pursuant to the provisions of section 1414 of the Fish and Game Code. Section 1414 of the Fish and Game Code reads as follows:

"The judge or justice before whom any person is tried for a violation of any provision of this Code may, in his discretion, upon the conviction of the accused, order the forfeiture of any device or apparatus designed to be, and capable of being used, to take birds, mammals or fish, and which was used in committing the offense charged. Any device or apparatus so forfeited shall be sold or destroyed by the commission. The proceeds from all such sales shall be paid into the State Treasury to the credit of the Fish and Game Preservation Fund."

Upon the trial of the action before us the plaintiff had judgment for the return of the property, or the value thereof, and damages for its detention. The court, after finding that the property was not taken for any tax, assessment or fine, made two findings, as follows:

"IV.

"The court finds that on said 20th day of December, 1935, the plaintiff, Holmes Bruce, was not using said personal property for the purpose of pursuing, taking or transporting fish or game in violation of the provisions of the Fish and Game Code of the State of California.

"V.

"The court finds that said boat oars, outboard motor, rowboats, coats, motor tools, and shotgun so taken from said plaintiff Holmes Bruce, by said defendants on said 20th day of December, 1935, were not designed and not manufactured for catching fish with a set line, or for the purposes of violating the provisions of the Fish and Game Code of the State of California."

These findings are to the effect that the plaintiff was not using said personal property for the purpose of pursuing, taking or transporting fish in violation of the Fish and Game Code of the state of California, and that the property seized

by the defendants was not designed nor manufactured for catching fish with a set line, etc., and upon these findings judgment went for the plaintiff as herein stated.

In addition to what we have said as to the facts, it appears that the boats in question had a quantity of fish that had apparently been removed from a set line. The boats were equipped with rollers, an equipment apparently useful or necessary in operating the set line.

No attempt was made by the defendants in this action to dispose of the property seized, but possession was taken thereof for the purpose of using the same as evidence upon the trial, and also for safekeeping until the trial of the plaintiff and his then codefendant, See, could be had for the alleged illegal fishing.

Upon a careful consideration of the language found in section 1414, *supra,* we are convinced that the construction placed thereon by finding No. V of the trial court is erroneous. The court finds, as set forth herein, that the property was not designed and not manufactured for catching fish with a set line, or for the purpose of violating the provisions of the Fish and Game Code of the state of California.

We think it is clear that the intent of the manufacturer of the two boats in question had nothing whatever to do with the crime of illegal fishing for which Bruce and See were arrested and subsequently convicted. There is a distinct difference between the meaning of the word "design" and the word "designed", the word used in the section of the code. In 18 C. J., page 971, the word "designed" is defined as follows: "Intended; adapted; designated. The term may also be employed as indicating a bad purpose with evil intent."

Had the legislature intended that the bad motive should be carried back to the manufacturer, then the evil intent would likewise have to be carried back to the manufacturer of the 855-foot net before it would be lawful either to seize or forfeit the same, even though found employed in a criminal pursuit.

It necessarily follows that any language in the Santos case, *supra,* which would imply or give rise to an inference that an evil intent must be carried back to the manufacturer, must be limited to the particular facts disclosed in the Santos case, and can be given no application here, where all of the instru-

mentalities found in the possession of the plaintiff at the time of his arrest were not only adapted to the uses and purposes for which they were being applied, but also absolutely necessary in order to accomplish the criminal purposes in which the plaintiff was engaged.

The statute also uses the words "device" and "apparatus". In 3 C. J., page 252, the word "apparatus" is defined as follows: "a generic word of the most comprehensive significance; implements; an equipment of things provided and adapted as a means to some end".

It requires no argument to lead to the conclusion that the boat's oars and rollers constituted equipment not only adapted to, but absolutely necessary in the use offshore of the 855-foot line. The entire equipment was a necessary part and parcel for carrying out the scheme of unlawfully catching fish. We may here add that a considerable portion of the catch was found in the two boats, part of the catch in one boat and part of the catch in the other.

Outside of the gun, of which no finding is made by the court, and of its unlawful use, nothing appears in the testimony. The entire equipment was a part and parcel, and a necessary part and parcel, in order that the plaintiff and his codefendant, See, might accomplish the taking of fish unlawfully.

Contrary to the findings and conclusion of the court we think that neither the arrest nor the seizing of the property to which we have referred was unlawful. The plaintiff and his associate, See, were engaged in the commission of a criminal offense within the sight and presence of the defendants' peace officers. It was their duty then and there to arrest the plaintiff and his associate, See, and to take possession of the property being used in the commission of the offense, and see that it was safely cared for until the time of the trial, and the record discloses that this is just what the defendants in this case did.

Section 836 of the Penal Code, so far as pertinent here, reads as follows:

"A peace-officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person: 1. For a public offense committed or attempted in his presence."

As supporting the contention of the plaintiff that his arrest was unwarranted our attention is called to the case of *Silva et al.* v. *MacAuley et al.*, 135 Cal. App. 249 [26 Pac. (2d) 887, 27 Pac. (2d) 791]. The facts of that case are readily distinguishable from the facts involved in the case at bar. In the MacAuley case it appears that the plaintiffs were engaged in transporting crabs from Oregon to San Francisco. The statute or the code provisions under which the plaintiffs in that case were arrested, the crabs, and the truck in which the crabs were being transported, seized and confiscated, were held not to apply. The code provisions simply prevented taking crabs from one district in California and transporting the same through other districts. The crabs in question were not taken from any proscribed district in the state of California, but were simply being transported through the state of California from a point in Oregon to the city of San Francisco.

The foregoing statement shows that the case relied upon by the respondent to establish the illegality of the arrest is entirely dissimilar to the facts here being considered, which show that the plaintiff was arrested and the properties seized while he was in the commission of a misdemeanor in the presence of the arresting officers.

That the arrest of Bruce and See was legal, and the taking possession of all of the equipment which was used in the carrying out of their illegal enterprise, we need only to cite the case of *People of the State of New York* v. *Nick Chiagles,* 227 N. Y. 193 [142 N. E. 583, 32 A. L. R. 676], and the annotations appended to the case as reported in A. L. R. The opinion in the case just referred to was written by Mr. Justice Cardozo, now a member of the Supreme Court of the United States. The syllabus clearly defines the right of arresting officers to seize property used in the commission of the offense for which the defendant is arrested. It is there held that the statutory immunity from unreasonable searches and seizures relates only to such as are unreasonable in the light of common-law traditions. ▮ A seizure of property found upon one under lawful arrest is not limited to things subject to be taken under a search warrant when there is no arrest of the possessor. Search of the person is unlawful only when the seizure of a body is a trespass, and the purpose of the search is to discover grounds as yet unknown, for arrest or ac-

cusation. Constitutional protection against self-incrimination does not prevent the use in evidence of articles taken from one under lawful arrest. In the New York case the property seized consisted of certain letters.

The annotations found in the New York case in A. L. R., *supra*, begin with the general statement, as follows:

"The right, without a search warrant, to search the person of one lawfully arrested, and to seize articles found on him, or in his custody, such as weapons, evidence of crime charged, etc., is well established."

In *United States* v. *Mills*, 185 Fed. 318; *Wise* v. *Mills*, 220 U. S. 549 [31 Sup. Ct. 597, 55 L. Ed. 579], we find the following language:

"From time immemorial an officer making a lawful arrest on a criminal charge has taken into his possession the instruments of the crime and such other articles as may reasonably be of use as evidence on the trial. A blood-stained knife or garment, a half-emptied phial of poison, a mask or disguise, counterfeit coins, plates for printing counterfeit notes, gambling devices, stolen property, and many other articles are thus seized every day on the person or the premises of the alleged criminal, and no one disputes the propriety of such seizure."

In *Tamplin* v. *Beach*, 49 Colo. 516 [113 Pac. 513, 37 L. R. A. (N. S.) 873], the following language is used, to wit: "The proposition that an officer who lawfully arrests an offender without a warrant may search for, and seize, and take into custody, the subject of the crime, or the thing or instrument by which it was committed, or which might aid the prisoner in escaping, but has no authority to search for and take from the prisoner any other property, is supported in *Tamplin* v. *Beach, supra.*" A number of other cases are cited in the notes to which we have referred, but what we have said illustrates the general principle as to the right of arresting officers to take possession of the instrumentalities with which the crime is then and there being committed, and is well supported. A reference to the notes is sufficient without lengthening this opinion by mentioning the different cases cited.

The boats taken possession of by the defendants in this case were so taken possession of for safekeeping, and were instrumentalities which the plaintiff and his associate, See, might have used in effecting an escape. Furthermore, in

arresting the plaintiff and his associate, See, it was absolutely necessary to take possession of all the instrumentalities used in the commission of the crime, including the two boats, else the same would have been left to drift aimlessly upon the waters of Clear Lake, and thus lost, not only to the plaintiff in this case, but the right of the people of the state of California to have the same forfeited and turned over to the fish and game commission.

The court made no finding as to the use of the gun, or as to its value. Hence, we have no basis upon which to enter any judgment in relation thereto.

From what we have set forth herein, it is evident that the judgment of the trial court should be reversed, and it is so ordered.

Thompson, J., and Pullen, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 2, 1938. Shenk, J., and Houser, J., voted for a hearing.