[Civ. No. 2939. Fourth Dist. Dec. 3, 1942.]

FLOYD ROYNON, Appellant, v. WILLIAM A. BATTIN et al., Respondents.

FLOYD ROYNON, Appellant, v. ART MANNING et al., Respondents.

862

Walker W. Downs and Owen E. Kupfer for Appellant.

Guthrie & Curtis and Jerome B. Kavanaugh, District Attorney (San Bernardino), for Respondents.

GRIFFIN, J.—This is an appeal from a judgment on a verdict in favor of all defendants and respondents in two consolidated actions instituted by plaintiff and appellant for false arrest and unlawful imprisonment. Two actions are involved in the present appeal, one in which the sheriff of San Bernardino County, E. L. Shay, and his deputies, Manning and Miller, are defendants, together with the Pacific Indemnity Company, as surety on the sheriff's bond. The

second is one wherein Constable Battin and the same surety company on his bond are defendants. The actions were consolidated for trial. The appeal is taken on a single record.

The acts complained of took place in Kelso, located in the San Bernardino County desert approximately 100 miles east of Barstow. Respondent Battin was constable of Kelso Township on May 29, 1937. At about 11:30 a. m. of that day, he observed appellant and his brother-in-law, Gibbel, in a truck at Kelso, and noted that they had a rifle and that there was blood on the back of the truck. He waited until these men drove off in the truck, and then, according to his testimony, watched them, through a telescope, drive the truck to a reservoir about a mile and a half from Kelso, and then up toward the mountain. Later, Battin went up to the reservoir and sighted them again through the telescope and noted that both men were circling and driving a herd of burros and that one man shot a number of the burros. He further testified that one of the burros was wounded and ran off and fell into a wash and that one of the men went over to look at it and then came back; that he saw one man drive the truck to the dead burros, and both men loaded the butchered burro meat into the truck; that he returned to Kelso about 3 p. m.; that the men returned in the truck about 5 p. m.; that a number of residents came to him and reported that the men were back and demanded that he take some action. Battin then went to where the men were parked in the truck at a railroad crossing and told them that he was the constable, and asked them if he might inspect the contents of the truck. Gibbel told him that he had burro meat in the truck. Battin asked both men if they had hunting licenses. Gibbel replied that he did not. Roynon answered that he did have one but not with him. According to Battin's testimony, he asked Gibbel if he would "take full responsibility" and Gibbel stated that he would not. Battin then placed them under arrest and stated that he would take them to see Judge Stricker, the local justice of the peace. Gibbel then stated that he would go to Judge Stricker's, but he wanted appellant to stay with the meat and unload it so it would cool and protect it from the dogs. After some little conversation, Battin took the keys to the truck and left with Gibbel. Appellant stayed and unloaded the burro meat. Constable Battin testified that at the judge's home he, Battin, "charged Mr. Gibbel with being without a proper driv-

er's license, without proper registration, and with hunting without a license., I also informed Mr. Stricker about the other gentleman, Mr. Roynon, that I had him down there. I told him what I had done and I charged him with hunting without a license." He then testified that at that time he did not have a complaint sworn out against them. As a result of the discussion with Judge Stricker, Battin was ordered by the judge to hold Gibbel and appellant and notify respondent Manning, the deputy sheriff at Barstow, to come and get them. Battin and Gibbel then returned to Kelso, Battin wired Manning, and after a time Manning wired back that he would come immediately. Battin then told Gibbel and appellant that he wanted to go to bed, and asked them if they would stay at the truck without being watched, which they agreed to do. About 2 a. m. Manning, together with Miller, arrived, awakened them, and they proceeded to the truck, where the deputies took charge of the men. The only district jail was in Barstow and the deputies drove the prisoners there, arriving at about 8 a. m., May 30, which was a holiday. On that date, Judge Stricker was away on a trip. About 9 a. m. on the morning of May 31, the deputies drove Gibbel and appellant back to Kelso, arriving around noon. They had dinner, and waited for the judge until 1 p. m., at which time court convened. A charge of hunting without a license, signed by respondent Manning, and a charge of cruelty to animals, signed by one F. J. Lee, an acting deputy of the State Humane Society Commission, were filed against both men. They were arraigned, pleaded not guilty, and asked for a jury trial. Bail was fixed at $250 each. Appellants were unable to make bail. They remained in the San Bernardino County Jail until the date of trial, which was originally set for June 7, 1939, and continued to June 16, 1939. At the trial the count charging appellant with cruelty to animals was dismissed and the jury acquitted him on the charge of hunting without a license. Gibbel was convicted of the latter charge.

Appellant testified at some length that the foregoing caused him damages by way of unfavorable publicity, humiliation, and mental anguish, including the loss of his W.P.A. employment.

Appellant first charges that the trial court erred in refusing to instruct the jury to return directed verdicts for the plaintiff. After receiving all of the evidence, the trial

court gave an instruction to the jury to the effect that "a peace officer may not lawfully arrest a person without a warrant of arrest for a misdemeanor unless the offense constituting the misdemeanor was actually committed or attempted in the presence of the arresting officer" and that "the person making the arrest must inform the person to be arrested of his intention to arrest him, and he must also tell him the cause of the arrest and the arresting person's authority to make it, except when the person to be arrested is actually engaged in the commission of or an attempt to commit an offense or is pursued immediately after its commission or after an escape" and that "where two or more officers or other persons participate and cooperate in the commission of an unlawful arrest or false imprisonment of an innocent citizen, all may be jointly and severally liable for any damages resulting therefrom" and that "when an arrest is made by a peace officer without a warrant, he must take the person arrested without unnecessary delay, before the nearest or most accessible magistrate in the county in which the arrest is made, and a complaint, stating the charge against the person must be laid before such magistrate" and that "whenever a defendant in an action for damages for false arrest and imprisonment seeks to justify an arrest or imprisonment on the grounds that he lawfully arrested or imprisoned the plaintiff without a warrant, such defendant has the burden of proving every fact essential to his defense of justification." The court then instructed the jury that " 'hunting without a license' is a misdemeanor," as well as "the offense of 'cruelty to animals' " and that "on May 29, 1939, it was not a public offense to possess or transport wild burro meat."

It is appellant's position that the evidence was insufficient to show that the offenses alleged were committed "in the presence" of Battin, the constable, and that appellant was therefore entitled to an instructed verdict. It is argued that Battin's testimony in reference to his observation of appellant and Gibbel was "fantastic" and was discredited by the unlikelihood of it, and that Battin would be unable to see them through a telescope, situated as he was situated, for a distance of $2\frac{1}{2}$ miles, and still be able to distinguish them or observe their conduct; and lastly, that the defense that the misdemeanor was committed "in the presence" was not pleaded and came as a surprise to appellant.

Section 427 of the Fish and Game Code recites that "a

hunting license, granting the privilege to *take* game birds and *mammals,* shall be issued.'' (Italics added.) Section 452 thereof provides that it shall be unlawful to possess any bird, mammal or part thereof which is taken in violation of any of the provisions of that code. Section 1410 thereof prescribes the penalty for the violation of these provisions. Under section 2, subdivision (e) of that act to ''take'' means ''hunt, pursue, catch, capture, or kill.'' Section 2, subdivision (g) thereof recites that a '' 'mammal' means wild mammal or meat thereof.'' Subsequent to the date here involved, the Legislature enacted a law (Stats. 1939, chap. 848, p. 2428 [chap. 2, div. IVa, § 1403, Fish and Game Code]), making it unlawful to kill or capture any undomesticated burro for the purpose of using the carcass thereof for animal food.

The question whether the crime alleged was committed in the presence of the arresting officer Battin, which would authorize him to make the arrest, was a question of fact to be determined by the jury. It appears from the evidence that certain portions of Battin's story were corroborated by other circumstances. He testified that he could see these men, through the telescope, hunting the burros, and that one burro was wounded and ran down a wash. The evidence discloses that on that same day Battin went to the hunting scene and took pictures of the remains of the burros and of the wounded burro, which he had observed through the telescope run down the wash. These pictures were received in evidence over the strenuous objection of appellant. █ The evidence, circumstantial and direct, fully justified Constable Battin in making the arrest of both appellant Roynon and Gibbel under the theory that the misdemeanor complained of, i. e., ''taking'' (hunting, pursuing, catching, capturing or killing) mammals ''without a hunting license, was committed in his presence.'' (*People* v. *Young,* 136 Cal.App. 699 [29 P.2d 440]; *Bruce* v. *Sibeck,* 25 Cal.App.2d 691 [78 P.2d 741]; *Gisske* v. *Sanders,* 9 Cal.App. 13, 16 [98 P. 43]; § 31, Pen. Code.) It has been held that a series of acts extending over a considerable period of time, and only constituting a criminal offense because of their continuance and repetition, alone or in conjunction with other circumstances, being capable of observation and actual knowledge by a peace officer, will justify him, when the series of acts is complete, in making an arrest without a warrant, as fully as in the case of any other misdemeanor committed or attempted in his presence.

In the instant case it was probably impossible, at the distance contended, for Battin to see whether appellant and Gibbel or either of them was properly armed with a hunting license, covering the activity in which they were engaged. However, Battin was entitled to await a more convenient time in ascertaining that fact, which he did do within a reasonable time before making the arrest. The time between the observation of some of the acts and the time of ascertaining that they did not have a license and the making of the arrest by the constable in the instant case was not unreasonable. (*People* v. *Craig,* 152 Cal. 42 [91 P. 997] ; *Ferguson* v. *Superior Court,* 26 Cal.App. 554 [147 P. 603] ; *In re Milstead,* 44 Cal.App. 239 [186 P. 170].) ■ The jury, by its verdict, resolved all questions of fact, including the question whether appellant had been damaged, against appellant. On this appeal we are bound by its determination of those facts. From the evidence it cannot be said that appellant was entitled to a judgment for damages as a matter of law. (*Hoppe* v. *Bradshaw,* 42 Cal.App.2d 334 [108 P.2d 947].)

■ Appellant argues that as a matter of law, from the evidence, he was delayed for an unreasonable length of time after his arrest before being brought before a magistrate for examination and trial and for the purpose of fixing bail, and that by reason thereof respondents were guilty of false imprisonment and were legally liable in damages therefor; that this was the only conclusion that the jury could reasonably have reached from the evidence; and that their verdict in favor of the respondents and the judgment entered thereon are clearly contrary to the law and evidence. Under the circumstances and conditions here presented it cannot be so held as a matter of law. This question of fact was placed squarely before the jury under proper instructions on that subject. In 79 A.L.R., page 13, many cases are cited in which certain circumstances were held to justify the delay, including inaccessibility of the magistrate, the intervention of holidays, and lateness of the hour. Generally, it is a question for the jury as to whether there was unreasonable delay on the part of those making the arrest. In *Peckham* v. *Warner Bros. Pictures, Inc.,* 36 Cal.App.2d 214 [97 P.2d 472], cited by appellant, the appellate court, in reversing a judgment notwithstanding the verdict, said at page 220:

"Applying the above-stated rules of law to the facts of the instant case, since plaintiff Sorrell was incarcerated for

almost twenty-four hours before being released, and in fact never taken before a magistrate, and plaintiff Peckham was incarcerated for more than forty-eight hours before being taken before a magistrate and released, *the case was properly submitted to the jury for a determination of the issue as to whether an unreasonable time had elapsed* after the arrest of said plaintiffs without taking them before a magistrate.'' (Italics ours.)

Next, appellant complains of claimed errors of the trial court in admitting certain evidence over his objection. One pertained to certain photographs of dead burro carcasses, which it is contended, excited the sympathy of the jury and prejudiced it against appellant. The record is replete with descriptions of the killing and slaughtering of the burros, the packing of the meat, and the blood on the clothes of the men. The photos were admissible in evidence. The argument that counsel for respondents were permitted to cross-examine appellant on irrelevant and immaterial matters is not meritorious and there appears to be no abuse of discretion. A trial court has discretionary power over cross-examination which will be disturbed on appeal only in case of an abuse thereof. (*East Bay Mun. Utility District* v. *Kieffer,* 99 Cal. App. 240 [278 P. 476, 290 P. 591].)

While respondents did not plead justification of the arrest based primarily on the reason that the alleged offense was committed in the presence of the arresting officer, respondent did deny appellant's allegations in his complaint that ''the arrest and imprisonment of plaintiff was wrongful, unlawful, and without any reasonable or probable cause,'' and did affirmatively set out the evidentiary facts above related. The affirmative defense complained of was brought out before the jury without objection on the part of appellant. The case was tried as though this issue was adequately presented by the pleadings. Appellant may not now raise the question of surprise or lack of proper pleading for the first time on appeal. It is the rule in this state that in the case of affirmative defenses where the parties on the trial treat a defense as sufficiently pleaded, it will be so treated on appeal, even though there may be an entire absence of an essential allegation. (*Busch* v. *Los Angeles Ry. Co.,* 178 Cal. 536 [174 P. 665, 2 A.L.R. 1607]; *Diefendorff* v. *Hopkins,* 95 Cal. 343 [28 P. 265, 30 P. 549]; *National Union Fire Insurance Co.* v. *Nason,* 21 Cal.App. 297 [131 P. 755]; 2 Cal.Jur., § 73, p. 246.)

Lastly, appellant complains of several instructions which were given or refused by the trial court. Without enumerating them, suffice it to say that we have carefully examined them and the complaint and the authorities of appellant in reference thereto. Most of the refused instructions of appellant were fully covered by other instructions on the subject. Others were properly refused. Some instructions given, which were offered by appellant and also by respondents, while not entirely consistent, were not prejudicially erroneous. (Art. VI, § 4½, Const.) Appellant offered an instruction in reference to the liability of the respondent Pacific Indemnity Company which was refused. As that respondent would only become liable in case a judgment was obtained against its insured, and no such judgment was rendered, it cannot be held that appellant was prejudiced thereby, even if there were error in such refusal. (*Foley* v. *American Ry. Express Co.*, 69 Cal.App. 669, 681 [232 P. 169].) Other points presented do not justify further consideration.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.